**James G. HOLMAN**

v.

**Donna M. HOLMAN.**

**No. 3–283A35.**

Court of Appeals of Indiana, Third District.

Jan. 14, 1985.

David M. Hamacher, Hamacher & Hamacher, John C. Skinner, Crown Point, for appellant.

Jay A. Charon, Robin D. Pierce, Spangler, Jennings, Spangler & Dougherty, P.C., Merrillville, for appellee.

GARRARD, Judge.

On November 10, 1980 the Lake Superior Court dissolved the marriage of James G. Holman (the husband) and Donna M. Holman (the wife). The court awarded the custody of the couple's three children to the wife. Among other things, the court ordered the husband to pay: child support in the amount of $105.00 per week,[1] all reasonable and necessary medical, dental, hospital, optical and pharmaceutical expenses, the cost of parochial school and hot lunches for the couple's oldest child, and one-half of the mortgage, taxes and insurance on the real estate owned by the parties. The court awarded the wife the exclusive use and possession of the real estate. Neither party appealed this order.

On June 1, 1981 the wife filed with the court her "Petition for Modification" requesting the court to increase the husband's support obligation by $280.00 per month. On November 19, 1981, after a hearing on the petition, the court fixed the husband's support obligation at $40.00 per week for each child, or $120.00 per week total. Neither party appealed this order modifying the original dissolution decree.

On March 17, 1982 the husband filed his "Petition for Temporary Modification" alleging that he had been laid off from his full time job at U.S. Steel and that he was therefore unable to meet his support obligation. On July 26, 1982 the wife filed her "Petition for Rule to Show Cause" asking the court to order the husband to show cause why he should not be held in contempt for his failure to pay the full amount of support as previously ordered by the court. On November 30, 1982 the court entered its order on these petitions. The court:

1. Reduced the husband's support obligation to $100.00 per week;

---

1. The order fixed child support at $210.00 every other week.

2. Reaffirmed the husband's mortgage payment obligation and gave him thirty days to satisfy any arrearages in those payments;

3. Found the husband to be in arrears with his support payments in the amount of $1,238.00 and with medical bills in the amount of $134.00 and ordered him to satisfy the arrearage with payments of $10.00 per week;

4. Found the husband in contempt for failing to keep current with the support payments pursuant to the court's previous orders and sentenced him to ten days in jail, suspending the sentence on the condition that the husband comply with current order of the court;

5. Found that the husband had not paid his daughter's parochial school tuition and certain medical bills as the previous orders had required and ordered him to satisfy those obligations; and

6. Ordered the husband to pay $3.75 per week for school lunches for his daughter in parochial school.

On February 3, 1983 the court held a hearing on the wife's petition for appellate attorneys' fees. After that hearing, the court ordered the husband to pay the wife $4,500.00 as preliminary appellate fees for the use and benefit of her attorneys.

The issues the husband raises on appeal are as follows:

I. Did the trial court err when it found the husband in contempt of the court's support order?

II. Were parts of the dissolution decree entered by the court on November 10, 1980 outside of the court's jurisdiction?

III. Did the trial court err in its order of November 30, 1982 in any of the following ways:

A. By inadequately reducing the amount of support;

B. By entering a support order which constituted *de facto* maintenance of the wife;

C. By determining the amount of the husband's support arrearage as of the date of the final order instead of the date of the husband's petition or the date of the hearing on the petition?

IV. Did the trial court err in awarding $4,500.00 of preliminary appellate attorneys' fees to the wife?

## I. Contempt

The court found "that the husband is in violation of this Court's Order for the payment of support and that he is in contempt of this Court's Order in that regard." The court then proceeded to state the amount by which the husband had failed to meet the court's weekly support order and sentenced him to ten days in jail. The court suspended the sentence on the condition that the husband comply with the court's order, including paying $10.00 per week to the wife for the arrearage in child support.

IC 34-4-7-3 provides "[e]very person who shall be guilty of any wilful disobedience of ... any order lawfully issued by any court of record ... shall be guilty of an indirect contempt of the court from which such ... order shall have issued." During the time the husband was in arrears with his child support payments, there was in effect a child support order requiring the husband to pay $120.00 per week to the wife for the support of the children. Over a twenty-five week period between March 1, 1982 and August 20, 1982, the husband paid the full amount of support only seven times; all other weeks he paid from $40.00 to $80.00.

The statement of the evidence shows the husband admitted he was in arrears.[2] However he asks us to reverse the court's finding of contempt arguing that the evidence shows his failure to pay was not

2. No report was made of the hearings which preceded the court's order of November 30, 1982. In place of a transcript of the evidence, the wife submitted and the court approved a statement of the evidence in conformity with Indiana Rules of Procedure, Appellate Rule 7.2(A)(3)(c). Our references to the evidence are taken from that statement.

wilful.[3] In support of his argument he offers the fact that he did make partial payments of child support despite the reduction in his income due to his being laid off from his job at U.S. Steel.

It was for the court to weigh the evidence and determine whether or not the husband's noncompliance with the court's order was wilful. *Whitman v. Whitman* (1980), Ind.App., 405 N.E.2d 608. The husband had the burden of proving to the court that his failure to comply was not wilful or was otherwise excused. *Isler v. Isler* (1981), Ind.App., 422 N.E.2d 416; *Slagle v. Slagle* (1973), 155 Ind.App. 304, 292 N.E.2d 624. The court's finding against the husband is, in effect, a negative judgment which we will reverse only if the husband now establishes there is no evidence to support the court's conclusion. *Isler, supra; Whitman, supra; Slagle, supra.*

The evidence shows that the husband was laid off by U.S. Steel on February 26, 1982. One or two weeks thereafter, the husband began receiving unemployment compensation payment of $173.00 per week. He later began work at Wilson Iron Works where his net pay for a forty-hour week was $219.00 although, with overtime and a reduction in the taxes withheld from his pay, he had at least one paycheck for $327.18 net. There were three weeks during the period from February 26, 1982 to November 30, 1982 when the husband was called back to work at U.S. Steel. There was also evidence that the husband made deposits in the bank from March through July 1982 totalling $7,854.00. He explained that $2,518.00 of that amount was money that had been loaned to him. Despite his reduction in pay and the other obligations imposed on him by the court's original dissolution decree, there was no evidence that the husband was financially unable to meet the support obligation or to support himself satisfactorily.

During the time the arrearages grew, the husband was under court order to pay child support in the amount of $120.00 per week. This order was in effect until its terms were modified pursuant to a subsequent order. *Whitman, supra.* We are sympathetic to the problems the husband faced when his income was reduced and appreciate that the husband did not ignore his obligation altogether. However there was evidence from which the court could conclude that the husband did wilfully disobey the court's order. We accordingly find no error in the court's finding of contempt.

## II. Validity of original decree

Having failed to appeal the court's original dissolution decree, the husband now attempts to collaterally attack parts of that decree by alleging the court was without jurisdiction to make certain orders. On the date the court entered its decree, IC 31–1–11.5–12 provided that in an action for the dissolution of a marriage,

"(a) ... the court may order either parent or both parents to pay any amount reasonable for support of a child, without regard to marital misconduct after considering all relevant factors including:

(1) the financial resources of the custodial parent;

(2) standard of living the child would have enjoyed had the marriage not been dissolved;

(3) physical or mental condition of the child and his educational needs; and

(4) financial resources and needs of the noncustodial parent.

(b) Such child support order may also include, where appropriate:

(1) sums for the child's education in schools and at institutions of higher learning, taking into account the child's aptitude and ability and the ability of the parent or parents to meet these expenses; and

---

**3.** The husband also argues the trial court erred to the extent it based the finding of contempt on anything but the husband's failure to pay the weekly support payments. Because it is clear

from the court's order that the only basis for the finding of contempt was the arrearage on the support payments, we will not discuss the husband's arguments beyond that issue.

(2) special medical, hospital or dental expenses necessary to serve the best interests of the child."

The husband reads section 12(b)(1) to preclude the court from ordering him to pay for his daughter's parochial school education including her school lunches, an obligation which the court reaffirmed in its order of November 30, 1982. He reasons that the phrase "education in schools and at institutions of higher learning" excludes education in elementary or secondary schools because they are not schools of higher learning. A clear reading of the statute itself belies the interpretation offered by the husband.

▪ Section 12(a)(3) requires the court to consider the educational needs of the child when it determines a reasonable amount of support for the child. Section 12(b)(1) goes on to permit the court to include in its support order "... sums for the child's education in schools and at institutions of higher learning ...." The statutory language clearly distinguishes education "in schools" and education "at institutions of higher learning" and allows for the inclusion of the costs for either or both. To do otherwise would tend to impair our paramount concern for the best interests of the child. *See In re Marriage of Bradach* (1981), Ind.App., 422 N.E.2d 342.[4]

▪ We conclude that the cost of a parochial school education may be included by a court in determining an amount reasonable for support of a child. The court's

order here was within its jurisdiction and we therefore find it not subject to the husband's collateral attack.[5]

▪ The husband's attack on the court's jurisdiction continues with his reading of Section 12(b)(2). He reasons that the court was without authority to order him to pay all *reasonable and necessary* medical, dental, hospital, optical and pharmaceutical expenses because Section 12(b)(2) only provides that the court's order may also include *special* medical, hospital or dental expenses. Again the husband tortures the statutory language with his version of statutory interpretation. He takes supplemental statutory language included as guidance for the courts in the exercise of their discretion and presents it as an exclusive statement of the factors which can be considered by the courts. Such a construction would detract from the statutory design to provide for the support of the children and challenges the common sense view that parents should be held responsible for their children's necessary as well as special health-care expenses. Indeed Indiana cases have specifically upheld child support orders including the same elements of expense which were included here. *See In re Marriage of Rupp* (1983), Ind.App., 449 N.E.2d 1164; *Morphew v. Morphew* (1981), Ind.App., 419 N.E.2d 770; *Eppley v. Eppley* (1976), 168 Ind.App. 59, 341 N.E.2d 212.

The husband's collateral attack on the court's original dissolution decree is without merit.[6]

---

**4.** Here, in fact, the husband admitted that at the time of the original divorce decree he desired his daughter to attend parochial school and he voiced no objection to paying for it.

**5.** The husband also claims the court's order was void because it violated his constitutional right to freedom of religion. He raises this issue for the first time on appeal. He claims the violation arises from the court ordering him against his consent to support a place of worship. Notwithstanding the utter lack of merit in his argument, we have already noted that the husband wanted his daughter to attend parochial school. His only stated reason for not wanting to pay for the school was his professed inability to pay.

His lengthy constitutional argument borders on the frivolous and merits no further consideration.

**6.** The husband also argues that, in its order of November 30, 1982, the court ordered him to pay a $60.00 medical bill which the husband claims was for the expense of frames for the wife's glasses. However the only evidence presented to the court was that this and other bills represented expenses on behalf of the children. The husband made no contention to the contrary until he filed his motion to correct errors. The evidence before the trial court was sufficient to support its order.

*III. Alleged defects in court's order of November 30, 1982*

A. Alleged inadequacy of the reduction of the husband's obligation.

The husband petitioned the court seeking a modification of the court's child support order. The court's order of November 30, 1982 lowered the husband's weekly child support obligation but reaffirmed his obligation to pay for his daughter's parochial school education. The husband alleges that the court, considering his inability to pay, should have lowered his child support obligation further.

■ A court may modify a support order "only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." IC 31-1-11.5-17. The burden of proving the necessary change of circumstances is upon the party petitioning for modification. *Jahn v. Jahn* (1979), 179 Ind.App. 368, 385 N.E.2d 488. We will review the court's decision only for an abuse of discretion, *Tucker v. Tucker* (1980), Ind.App., 406 N.E.2d 321, which occurs only when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it on the reasonable, probable and actual deductions to be drawn therefrom. *Hayden v. Hite* (1982), Ind. App., 437 N.E.2d 133.

The modification order of November 30, 1982 left the husband's approximate weekly obligation at $153.34 including his daughter's parochial school tuition.[7] The husband's net weekly pay at the time was no lower than $219.00 and had been as high as $327.18. During the seven months starting with January 1982 the deposits into the husband's checking account totalled $10,794.00. The husband substantiated $2,518.00 of that amount as loan proceeds. Subtracting the loan amount from the deposit amount and assuming the husband deposited all income in the bank, the husband had $250.00 per week at his disposal over the seven-month period (30 weeks), a figure consistent with the range of net weekly pay figures.[8]

■ The husband was therefore obligated to pay approximately 60% of his net pay for the support of his three children including the payment of his daughter's parochial school tuition. This amount admittedly represents a larger percentage of the husband's net earnings than had been encumbered before the husband was laid off. However we cannot say the court abused its discretion by, in effect, ordering the husband to provide an average of $50.00 per week for each of his three children while retaining $100.00 per week for himself.

The wife's financial resources at this time were negligible. She had found a part-time job from which she earned $27.00 per week net pay. A major portion of the wife's time was devoted to cooking, household work and rearing the children. There appeared to be no change in the daughter's educational needs from that which had been established at the hearing on the original decree. In sum, it is apparent the court considered all relevant factors.

■ The husband has failed to show a change in circumstances so substantial as to make the modified support terms unreasonable. He has also failed to show the circumstances that have motivated courts of other jurisdictions to reduce a support award, such as: inability to pay, *Gray v. Gray* (1976), 39 Ill.App.3d 675, 349 N.E.2d 926; *Butler v. Butler* (Mo.Ct.App.1953), 262 S.W.2d 330; *Bowers v. Bowers* (1937), 192 Wash. 676, 74 P.2d 229; or inability to live on the remaining amount, *Deacon v. Deacon* (Ky.1951), 242 S.W.2d 857; or an

---

7. The amount of $153.34 is the sum of the following weekly obligations: (a) $100—support; (b) $9.62—tuition averaged over 52 weeks; (c) $3.75—school lunch; (d) $6.48—medical expenses already incurred, averaged over 52 weeks; (e) $10—arrearage in support; and (f) $23.49—house payment.

8. The amount at his disposal of course would be higher if less than all of his earnings had been deposited in the bank.

obligation so high as to destroy the husband's incentive, *Weiland v. Weiland* (1963), 255 Iowa 477, 122 N.W.2d 837; *McCann v. McCann* (Mo.Ct.App.1969), 448 S.W.2d 323; or an obligation which places a confiscatory burden on him, *Commonwealth v. Yeats* (1951), 168 Pa.Super. 550, 79 A.2d 793. We therefore find no error in the court's decision which lowered the husband's support obligation by only $20.00.[9]

**B.** *De facto* maintenance.

■■■ The husband argues that the court's support order is in fact an order for maintenance of the wife.[10] His argument is pure speculation. He merely concludes that the wife cannot possibly provide for her own support on the money she makes so she must be using the child support payments for her own benefit. The evidence showed that the wife had obtained part-time employment which gave her a net income of $27.00 per week after she paid babysitters. There was also an indication she had sought food stamps and loans to support herself and her children. The evidence does not support the husband's allegation.

**C.** Arrearage.

The court's modification order of November 30, 1982 became effective on that date. The husband contends the court should have made its modification of his support obligation effective March 17, 1982, the date on which he filed his petition for modification or August 25, 1982, the date of the hearing. He correctly cites *In re Marriage of Wiley* (1983), Ind.App., 444 N.E.2d 315 for the proposition that "a trial court has discretion to make a modification relate back to the date a petition to modify is filed" or to any date thereafter. 444

N.E.2d at 319. We expressed our agreement with *Wiley* in *Kruse v. Kruse* (1984), Ind.App., 464 N.E.2d 934 where we found the trial court did not abuse its discretion when, on February 21, 1983, it ordered that child support would be increased effective October 22, 1982 on a petition for modification filed October 12, 1982.

■■ The husband overlooks an essential aspect of both *Wiley* and *Kruse*. Both cases stated that a court *may* order modification effective as of the date the petition was filed or any date thereafter. We will review the court's choice of effective date only for an abuse of discretion. *Kruse, supra* at 939.

The husband seeks to place the blame for his alleged suffering under an unreasonable and unfair support order on "clogged court calendars" and "delay by the opposing side." The record shows otherwise. The husband filed his first petition to modify on March 17, 1982. The court set the hearing on the petition for May 7, 1982. The next entry in the record shows the husband appearing by counsel on May 24, 1982 to reset the hearing for June 17, 1982. Thereafter, the husband changed counsel and on June 17, 1982 filed his second petition to modify. The court set the hearing on the petition for July 26, 1982. On that date, the parties' attorneys conferred with the trial judge in chambers and the matter was continued at the request of the husband's attorney. A hearing was held in the last week of August 1982 after which "[n]o determination was made by the Court with the concurrence of both sides." The parties next met with the trial judge on November 30, 1982 in an attempt to resolve their dispute. However the parties were unable to agree and the court entered its order modifying support.

*Board of Commissioners of Benton County v. Whistler* (1983), Ind.App., 455 N.E.2d 1149.

---

**9.** Related to the above allegation of error the husband argues the court erred by ordering him to pay the cost of his daughter's parochial school education without first considering the husband's ability to pay or his daughter's educational needs. He has waived any error by failing to appeal from the original decree. His allegations amount to a collateral attack which can have no effect on the original decree without a showing the original judgment is void.

**10.** At the time this order was entered, IC 31–1–11.5–9(c) controlled the court's discretion to provide for maintenance and required a finding that the spouse to be maintained was either physically or mentally incapacitated.

■ We agree with the husband that he should not be denied complete relief simply because he acquiesced in the delay of this case. However, the husband's view would require us to reverse a trial court whenever it failed to make its modification order effective as of the date of the petition or the hearing on the petition. The law requires that the husband demonstrate an abuse of the court's discretion. This he has not done and accordingly we find no error.

### IV. Appellate fees

The trial court ordered the husband to pay $4,500.00 to the wife's attorneys as preliminary appellate fees. The husband contends that the court erred in making its award because the financial conditions of the parties were relatively equal, the court ignored the parties' relative ability to pay for fees, the court had insufficient information on which to base its award, and the court abused its discretion by awarding the amount of fees it did. He also contends the court erred by sustaining the wife's objection to the introduction of the husband's affidavit at the hearing held on the wife's petition for attorneys' fees.

■ A trial court

. "... may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any [dissolution of marriage proceeding] and for attorneys' fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or after entry of judgment." IC 31–1–11.5–16. The statute gives broad discretion to the trial court in awarding attorneys' fees, including amounts awarded *pendente lite* or "pending the action." *Svetich v. Svetich* (1981), Ind.App., 425 N.E.2d 191.[11] The court may consider the cost of defending an appeal when fashioning its award of attorneys' fees. *Barnett v. Barnett* (1983), Ind.App., 447 N.E.2d 1172; *Burkhart v. Burkhart* (1976), 169 Ind.App. 588, 349 N.E.2d 707; *Johnson v. Johnson* (1976), 168 Ind.App. 653, 344

N.E.2d 875. When making an award of attorneys' fees in a dissolution proceeding, "the trial court must consider the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income, and such other factors as bear on the reasonableness of the award." *Barnett v. Barnett, supra* at 1176. We review such awards only for an abuse of discretion. *Johnson v. Johnson, supra.*

On February 3, 1983 the trial court held a hearing on the wife's petition for attorneys' fees *pendente lite*. The evidence presented at the hearing consisted of the testimony of the wife and of her attorney, Jay Charon. Charon testified that the wife petitioned for attorneys' fees because of the husband's impending appeal; that he had already spent 12 to 15 hours on the case and expected a total of 100 to 120 hours preparation for the appeal at a charge of $70.00 per hour; and that, in his opinion based on more than twenty years as a practicing attorney, the amount he sought ($3,500.00 to $4,500.00 as a preliminary fee) was reasonable. The husband's attorney did not cross-examine Charon on the record, stating only that he had no quarrel with what Charon had said.

The wife testified that she had no money with which to defend the husband's appeal; that she was not employed at that time; and that she had no independent source of income. On cross-examination she explained she quit a job she recently had because she did not have a babysitter to take care of her children who were "getting sick all the time."

The husband did not attend the hearing. His attorney offered the husband's affidavit into evidence, the content of which is not apparent from the record. The court sustained the wife's objection to the introduction of the affidavit into evidence. No other evidence was offered.

Pointing to the absence of any information on the contents of the affidavit, the wife urges that no error has been preserved because of the husband's failure to

11. We decline the husband's invitation to reconsider the soundness of our holding in *Svetich.*

make an offer of proof. This contention misperceives the nature of the defect.

■ While the affidavit was apparently offered as "testimony" by the husband, it should have been treated as an exhibit and received for the record as an exhibit formally offered in evidence and ruled inadmissible. No further offer of proof was necessary, since the instrument on its face disclosed the exact limits of what it purported to prove. *Compare* Fed.R.Evid., Rule 103(a). We need not, however, premise our ruling upon the failure to make the affidavit part of the record since it was inadmissible over objection in any event.

■ The husband is wrong in his assertion that the affidavit was admissible pursuant to Indiana Rules of Procedure, Trial Rule 43(E) as merely constituting evidence on a motion. *See In re Hadley* (1921), 191 Ind. 104, 132 N.E. 255; *Indiana & Michigan Elec. Co. v. Pounds* (1981), Ind.App., 426 N.E.2d 45. When the court conducted the hearing upon the wife's petition it did so to determine the issues of fact concerning the wife's entitlement to attorneys' fees and the amount, if any, to be ordered paid. The hearing thus constituted a trial within the meaning of TR 43(A). *See McAllister v. State* (1972), 258 Ind. 238, 280 N.E.2d 311; *Gulf Oil Corp. v. McManus* (1977), 173 Ind.App. 147, 363 N.E.2d 223. Accordingly, in order to preserve the wife's rights to cross-examination and the ability of the factfinder to observe his demeanor and determine credibility, the rule requires that the testimony be presented orally in open court (or by deposition in conformity with TR 32) unless the opposing party consents.

■ The husband's allegation of error rests primarily on his contention the court failed to consider the parties' relative financial circumstances and ability to pay their own attorneys' fees. However the wife's testimony establishing her inability to afford an attorney to defend the husband's appeal was unrefuted by the husband and the husband offered no evidence of his own financial circumstances. Had the court been entitled to consider the evidence presented at the August 1982 hearing on the husband's petition to modify, it might have concluded the husband had limited ability to contribute towards attorney fees. However, the evidence from the August 1982 hearing was not before the court for the purpose of the hearing held February 3, 1983. The only evidence the court could properly consider was that offered by the wife and her attorney. *Cf. Barnett v. Barnett* (1983), Ind.App., 447 N.E.2d 1172 (although the evidence from the original dissolution hearing disclosed the financial positions of the parties, it was an abuse of discretion for the court, after a modification of custody, to award appellate attorneys' fees to the husband without conducting an evidentiary hearing or otherwise considering the present economic circumstances of the parties).

■ The court also properly did not consider the affidavits attached by the husband to his motion to correct errors. These affidavits were intended to show the husband's unfavorable financial condition. However, the affidavits are not the type envisioned by TR 59(H)(1) as they are merely "an attempt to get evidence before the court which was not, but should have been, presented at trial." *Berkemeier v. Rushville National Bank* (1982), Ind.App., 438 N.E.2d 1054, 1057. *See also Joy v. State* (1984), Ind.App., 460 N.E.2d 551 (affidavits in support of an allegation of newly discovered evidence must aver that evidence was discovered subsequent to trial).

■ The evidence properly before the court showed that the wife was financially unable to defend the appeal being initiated by the husband. The wife's attorney estimated the appeal would require up to 120 hours of work to defend, an estimate unquestioned as to its reasonableness at the hearing.[12] Given the evidence before it, the court was within its discretion in

12. The husband raises 22 issues in his 149-page brief. The wife's brief covers 74 pages. The husband also submitted a reply brief 121 pages long.

awarding $4,500.00 preliminary fees to the wife so she would not be left without an answer to the husband's allegations of error.

If the factual record concerning this issue suffered at all, it was due to the husband's failure to appear and present testimony. Although the trial court would have been better equipped to award or decline to award fees based on evidence from both parties, the evidence before it was adequate for a determination.

The husband has shown no error. Accordingly, the judgment of the trial court is affirmed in all respects.

Affirmed.

STATON, P.J., and HOFFMAN, J., concur.