Arthur C. PLANERT, Appellant
(Petitioner Below),

v.

Wilma Jean PLANERT, Appellee
(Respondent Below).

No. 3–784A203.

Court of Appeals of Indiana,
Third District.

June 12, 1985.

George Kohl, Raskosky & Kohl, Hammond, for appellant.

Robert M. Hess, Sachs and Hess, P.C., Hammond, for appellee.

HOFFMAN, Judge.

On November 16, 1983 the trial court dissolved the marriage of Arthur and Wilma Jean Planert. Appellant Arthur appeals the decision of that court raising two issues for review:

(1) whether the trial court abused its discretion in its division of the marital assets; and

(2) whether the trial court abused its discretion in ordering Arthur to pay Wilma Jean's attorney fees.

■ Arthur's first contention is that the trial court abused its discretion in its division of the marital assets. The disposition of property is within the sound discretion of the trial court, and this Court will only reverse for an abuse of that discretion. In review, this Court must determine whether the disposition of the marital assets is clearly against the logic and effect of the facts and circumstances before the court, that is, "just and reasonable" as required by IND.CODE § 31–1–11.5–11(b) and the factors enumerated therein.[1] *Hoyle v. Hoyle* (1985), Ind.App., 473 N.E.2d 653.

The trial court's dissolution order gave the following assets to Wilma Jean:

1) the marital real estate valued at $43,-125.00,

2) the parties' furniture, appliances, and household goods located at the marital residence, and

3) the parties' 1973 Pontiac automobile.

---

1. The section provides:

"(b) ... In determining what is just and reasonable, the court shall consider the following factors:

(1) the contribution of each spouse to the acquisition of the property, including the contribution of a spouse as homemaker;

(2) the extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift;

(3) the economic circumstances of the spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell therein for such periods as the court may deem just to the spouse having custody of any children;

(4) the conduct of the parties during the marriage as related to the disposition or dissipation of their property;

(5) the earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties."

The court awarded Arthur the parties' two cemetery plots valued at $400.00. In addition, the court held Wilma Jean responsible for the loan from the parties' daughter, Cynthia, for real estate taxes on the marital real estate, in the amount of $2,842.94. The court also held Arthur responsible for the following debts:

1) debt owed to the Internal Revenue Service in the amount of $1,600.00, originating from Arthur's now defunct business;

2) debt owed to attorney John Hilbrich in the amount of $675.00 for work done in handling Arthur's individual bankruptcy; and

3) debt owed to daughter, Cynthia, for loans to Arthur's business in the amount of $2,932.40.

In making this determination, the trial court considered the following evidence.

There was testimony that prior to the marriage in 1952, Wilma Jean had accumulated $2,000.00 in savings. During the first years of the marriage, she accumulated an additional $2,000.00 from working while Arthur was in the military. Wilma Jean continued to work until the birth of the couple's first child in 1958, and from that time until approximately 1977 she was a homemaker, caring for the children and the home. Arthur was steadily employed from the time he got out of the service until 1974 when he purchased and began to operate a water softening business. The business faltered and Arthur ultimately filed bankruptcy in 1979. The parties agree that the major contributing factor to the business' failure was Arthur's drinking problem, and that had Arthur not had the problem the business could have flourished and would be a valuable asset at this time. Wilma Jean worked as a part-time bookkeeper for the business during its last three years of existence. Since the failure of the business, Arthur has run out of unemployment benefits and presently earns under $100.00 per week as a telephone solicitor. His expenses are $45.00 per week rent and $12.00 per week for utilities. Wilma Jean is, and has been employed as a receptionist earning approximately $100.00 per week. Since 1977, Arthur has spent considerable time drinking in taverns, and little, if any, time at home. In addition, there was evidence that he provided almost no financial support for the family since that time, when he began to drink away all receipts of the faltering business.

From the time Arthur's business began to fail, Wilma Jean's mother (Grandmother herein) has hosted the family dinner on an average of two to three times each week. In addition, Grandmother has given Wilma Jean $100.00 per month for the past five years for groceries and has bought much of the clothing for the children.

The family also has a daughter who has provided over $10,000.00 in loans and other financial support since mid-1978. The daughter, Cynthia, has paid real estate taxes and repair bills, and in 1978 gave Arthur a loan in the amount of $2,932.40 for his business obligations. Most of the furniture in the children's rooms was purchased by the children themselves and much of the furniture in the other rooms of the house was purchased by Cynthia or acquired by inheritance. In fact, the only furniture which Arthur helped purchase was a stove which is now 29 years old, a refrigerator which is now 19 years old, and certain living room pieces which were bought several years ago.

There was testimony that but for the combined efforts of Cynthia, Wilma Jean, and Grandmother, the parties would have lost everything. The parties do own a home which was purchased by Arthur and Wilma Jean in 1957 for $16,800.00. The parties used Wilma Jean's accumulated savings of $4,000.00 as a down payment for the home.

■ While on its face the distribution of marital assets may seem harsh, it is nevertheless clear that the trial court considered each of the factors required by the statute and rendered a well-reasoned dissolution. Of great importance is factor four: "the conduct of the parties during the marriage as related to the disposition or dissipation of their property." From the facts

presented to the court, there is no question that Arthur's conduct led to the dissipation of what would have been a valuable asset. The trial court is required to consider this fact. As the trial court did properly consider the factors enumerated in IND.CODE § 31-1-11.5-11(b), and the court's disposition of the marital assets is consistent in regard to, and just and reasonable in light of those factors, the trial court did not abuse its discretion.

■ In its dissolution of the marital estate, the trial court also held each party responsible for certain debts and obligations. While Arthur contends that this allocation does not satisfy the "concept of fairness" in light of the assets he received, it is clear that the trial court did no more than merely assign to him those obligations which he had individually accumulated and on which Wilma Jean had no liability. The debts to the Internal Revenue Service, attorney Hilbrich, and Cynthia are all debts of Arthur alone, which were incurred by his business and were not discharged in his personal bankruptcy. Thus the court did not err in making it clear that Arthur had sole responsibility for those outstanding obligations.

■ Arthur's final contention is that the trial court erred in ordering him to pay Wilma Jean's attorney fees in the amount of $1,830.00. It is clear that IND.CODE § 31-1-11.5-16 allows the trial court to award attorney fees. When making an award of attorney fees in a dissolution proceeding, the trial court must consider the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income, and such other factors as bear on the reasonableness of the award.

This Court reviews such awards only for an abuse of discretion. *Holman v. Holman* (1985), Ind.App., 472 N.E.2d 1279. Arthur argues that due to his age and inability to locate better employment, as well as the fact that he is receiving less than Wilma Jean through the dissolution, the award of attorney fees constitutes an abuse of discretion.

The evidence presented to the trial court revealed that both Arthur and Wilma Jean have liquid assets totaling roughly $100.00 per week. There was no evidence of any accounts or money held by either party. While Wilma Jean possessed assets which she might be able to sell in order to pay her attorney fees, this Court cannot say that the trial court abused its discretion by not requiring her to liquidate the home.

As the trial court clearly considered those factors which it is required to consider in fashioning its award of attorney fees, and the award is not unreasonable in light of all the facts and circumstances, this Court cannot conclude that the trial court abused its discretion.[2]

Affirmed.

STATON, P.J., and GARRARD, J., concur.

---

2. While this writing Judge may have fashioned the award of attorney fees a different way, it is neither the function nor the privilege of the Court of Appeals to substitute its judgment for that of the trial court unless the trial court has abused its discretion.