Sherman BAKER, Appellant
(Defendant Below),

v.

Mary Ethel BAKER, Appellee
(Plaintiff Below).

No. 2–1284A380.

Court of Appeals of Indiana,
Fourth District.

Jan. 29, 1986.

James E. Freeman, Jr., Sansberry, Dickmann, Freeman & Builta, Anderson, for appellant.

Joe Keith Lewis, Fishburne & Lewis, Marion, for appellee.

CONOVER, Judge.

Defendant-Appellant Sherman Baker (Sherman) appeals from a marriage dissolution decree, challenging the distribution of marital property, the court's order for him to pay child support for his 22-year-old retarded son, and the court's order for him to pay a percentage of Plaintiff-Appellee Mary Baker's (Mary) attorney fees and costs.

We affirm.

ISSUES

Sherman presents three issues for our review which we restate as follows:

1. whether the court's division of marital property was just and reasonable pursuant to IND.CODE 31–1–11.5–11(b), and 31–1–11.5–11(c),

2. whether the court abused its discretion in ordering Sherman to pay a percentage of Mary's attorney fees and costs, pursuant to IND.CODE 31–1–11.5–16(a),

3. whether the court erred in finding Sherman and Mary's 22-year-old retarded

son not emancipated pursuant to IND. CODE 31–1–11.5–12(d)(2), thereafter holding Sherman responsible for child support payments.

## FACTS

Mary and Sherman were married on June 27, 1957. They separated on March 20, 1984, after 27 years of marriage. The marriage dissolution decree was entered on September 18, 1984.

Three children were born of the marriage. The only daughter died at birth and the elder son is emancipated. Dennis, the younger son, was born September 10, 1961. He is retarded and presently lives with his mother. A doctor and a special education teacher testified Dennis is unable to live alone. They claim although he has a high school diploma and has been employed in the past, he lacks logical reasoning ability and is in need of constant supervision in employment.

The parties owned no property when they were married. At the time of dissolution, they owned 80 acres of real estate, debt free, as tenants by the entireties. On the land valued at $132,500 with improvements was the marital home, another house under construction, and the family farm.

The court further considered the following as marital assets:

(a) Farm equipment—$20,655.00

(b) Hand tools—818.00

(c) Marion Independent Federal Credit Union Savings 10,696.00

(d) Marion Independent Federal Credit Union Checking Account 6,303.00

(e) Essex Savings Account $7,083.00.

(f) Indiana Income Tax Refund check $256.00

(g) Federal Income Tax Refund Check $3,378.00

(h) Respondent's General Motors stock $1,136.00

(i) Respondent's General Motors Savings Plan $1,531.00

(j) Wheat and bean crops (recently sold at market) $4,700.00

(k) Petitioner's checking account $743.00

(l) Omega automobile $6,200.00

(m) 1977 Pick up truck $3,800.00

(n) Home furnishings, clothing and other personal effects of an unspecified value,

(o) Respondent's gun collection of an unspecified value

(p) Cemetery lots of unspecified value.

Sherman has been employed at CPC/Fisher Body Division of General Motors for over 25 years. During the years 1981 through 1983, his annual income averaged $37,300. His pension will provide an estimated $2,044 per month if he retires at age 65.

Mary raised the children, performed homemaking tasks and assisted in the family farm operation until 1978. She then began working as a clerk-typist for Essex International. During the years 1981 through 1983 her annual income averaged $9,500. Her pension program will provide an estimated $250 per month if she retires at age 65.

The trial court found the parties' pension programs did not qualify as property. Because there was no present right to withdraw the funds, the programs were not included in the calculation of marital assets.

The court did find a great disparity in the parties' present and future earning abilities. Based on this disparity, the court granted Mary a greater percentage of marital property and proceeds from the sale of the real estate and farm equipment.

The court found Dennis to be in need of support from his parents for an indefinite period of time. Thus, although 22-years-old, Dennis was not emancipated. The court ordered Sherman to pay $75 per week for Dennis's support.

The court further ordered Sherman to pay about 50% of Mary's attorney fees and costs, based on the disparity in the parties' income and earning ability, and the complexity of the litigation.

Sherman appeals, claiming the trial court erred in all respects.

## DISCUSSION AND DECISION

### Standard of Review

■ Our standard of review regarding the division of marital property, the award of attorney fees, and the order for child support payments is one and the same. The trial court has discretionary power to act in all of these areas. *Planert v. Planert* (1985), Ind.App., 478 N.E.2d 1251, 1252 (disposition of marital property); *Holman v. Holman* (1985), Ind.App., 472 N.E.2d 1279, 1288 (attorney fees); *Hoyle v. Hoyle* (1985), Ind.App., 473 N.E.2d 653, 656 (child support payments).

■ It is only the abuse of such discretion which is reviewable on appeal. The presumption in favor of the correct action of the trial court is one of the strongest presumptions applicable to the consideration of a case on appeal. *Temple v. Temple* (1975), 164 Ind.App. 215, 328 N.E.2d 227, 230.

■ The trial court action will not be reversed for an abuse of discretion unless there is shown to have been an erroneous conclusion and judgment clearly against the logic of the facts and circumstances and the deductions to be drawn therefrom. *York v. York* (1985), Ind.App., 472 N.E.2d 1308, 1309. Furthermore, our standard of review requires us not to reweigh the evidence, and to consider only evidence and reasonable inferences most favorable to the appellee. *Swinney v. Swinney* (1981), Ind.App., 419 N.E.2d 996, 998.

### I.

### Division of Marital Property

Sherman contends the trial court abused its discretion in awarding Mary 60% of the marital assets. He claims this division was not just and reasonable pursuant to the provisions of IC 31-1-11.5-11(b). Sherman bases his argument on our prior holding in *Luedke v. Luedke* (1985), Ind.App., 476 N.E.2d 853. This decision held where one spouse is primary wage earner whose income finances the acquisition of marital assets, and the other spouse is the primary homemaker who earns no income, IC 31-1-11.5-11(b)(1) requires a "fifty-fifty" division of the marital property, adjusted by the facts relating to subsections (2)—(5). The Supreme Court vacated this opinion.

*Luedke v. Luedke* (1985), Ind., 487 N.E.2d 133. There, Justice Pivarnik said

The interpretation of subsections (1) through (5) of Ind.Code § 31-1-11.5-11(b) has been that the trial judge uses these factors in making a division of property and in weighing the evidence of contributions by the parties in the various manners described therein. This sensitive and difficult task of the trial judge to weight these factors and make a division has been left to his discretion. Perhaps it could be said that in beginning to divide property pursuant to a dissolution of marriage, one's mind *ought* to lean toward an equal division until facts are brought forward to indicate otherwise; but to *require* as a matter of law that the trial judge work from the standpoint of a rebuttable presumption of a "fifty-fifty" split and require any variance to be supported by particular findings of fact, is to put an artificial structure on the fact-finding process which may very well impinge the trial judge's ability to openly weigh all the facts and circumstances, giving equal regard to all of them. An examination of all similar cases would undoubtedly show an equal number of times where trial judges have divided assets evenly or have found the evidence to weigh in favor of the homemaker, awarding her more than fifty per cent (50%). Of course, the converse is also true. The reasons for this, even as the Court of Appeals pointed out, is that a complete and thorough examination needs to be made of the quantity and quality of the contribution of both the wage earner and homemaker in order to come to a final determination.

*Luedke*, at 134.

■ Following the Supreme Court decision and the guidelines set out in IC 31-1-

11.5–11(c), there is ample evidence here to show the trial court acted within its discretion. The trial court emphasized the present and future earning ability of each spouse and saw great disparity favoring Sherman. Although Sherman's pension fund was not considered in the property division, the court could properly look at his 25 years of accredited service, and the fact he will receive a comfortable pension, in reaching its "just and reasonable" determination. Mary, conversely, has been working outside the home for only about 6 years. As a clerk-typist, she will never reach the level of income or future pension entitlements enjoyed by Sherman.

 There is a strong presumption the trial court considered the statutory factors found in IC 31–1–11.5–11(c) and properly applied them to its division of marital assets. *Coster v. Coster* (1983), Ind.App., 452 N.E.2d 397, 404. In arriving at a just and reasonable disposition, the trial court need not affirmatively set out each statutory consideration affecting the division and need not split the property equally. Such a division is within the trial court's discretion and does not alone imply error. *Coster, supra,* 452 N.E.2d at 404. Considering the facts and circumstances here, the trial court acted within the bounds of its discretion.

## II.

### Attorney Fees and Costs

Sherman contends the trial court erred in ordering him to pay $1,500 or approximately 50% of Mary's attorney fees and costs.[1] He claims because the distribution of marital assets favors Mary and because Mary is employed, she is able to pay her own attorney fees.

1. Sherman incorrectly applies IC 34–1–32–1 to the trial court's order for him to pay a percentage of Mary's attorney fees and costs pursuant to IC 31–1–11.5–16(a). The record clearly indicates the *costs* here were for maintaining the divorce action. The cases cited by Sherman are distinguishable. *Epply v. Epply* (1976), 168 Ind.App. 59, 341 N.E.2d 212, 217; *Lucas v. Lucas*

 Statutory law in Indiana gives the trial court wide discretion in allowing the payment of reasonable costs from one party to the other for the costs of defending a suit for dissolution. *State ex rel. Paxton v. Porter Superior Court* (1984), Ind., 467 N.E.2d 1205, 1207; *Hawblitzel v. Hawblitzel* (1983), Ind.App., 447 N.E.2d 1156, 1164.

In *Luedke, supra,* at 135, Justice Pivarnik stated the trial court has "full discretion to award any amount of attorney's fees."

 In determining an award of attorney fees in an action under our divorce statute, the trial court must consider the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and earn adequate income, and such other factors as bear on the reasonableness of the award. *Barnett v. Barnett* (1983), Ind.App., 447 N.E.2d 1172, 1176.

As previously stated, Sherman's earning ability and present income far exceeds Mary's. Her annual income has averaged only $9,500 during the past three years.

 When exercising its discretion under IC 31–1–11.5–16, the trial court may consider the superior earning power of one of the parties. Further, while the trial court must consider the resources of the wife as the one for whose benefit the order is sought, that the wife had assets from which payment could be made does not, standing alone, make an award for her benefit improper. *Ross v. Ross* (1979), Ind.App., 397 N.E.2d 1066, 1070–1071.

 Therefore, it was not an abuse of discretion for the trial court to order Sherman to pay $1,500 of Mary's $3,000 attorney fees and costs.

(1949), 119 Ind.App. 360, 86 N.E.2d 300, 305. These cases stand for the proposition court costs, as distinguished from costs in maintaining an action, are to be apportioned proportionately where certain issues in a divorce action are decided in favor of one party and other issues in favor of the other party.

## III.

### Child Support

Sherman thirdly contends the trial court erred in ordering him to pay $75 per week to support his 22-year-old retarded son. Sherman claims Dennis is emancipated. Dennis has a high school diploma, a driver's license, and has worked at several jobs.

Although the testimony at trial confirmed the fact Dennis had been employed, the trial court did not abuse its discretion in holding Dennis was incapable of supporting himself. Testimony at trial indicated Dennis's prior employment involved tasks such as taking eggs off a conveyor belt and placing them on a skid. Dennis could hold this job for only a short time before being fired.

The critical question here is whether there has been an emancipation. In *Caddo v. Caddo* (1984), Ind.App., 468 N.E.2d 593, Judge Garrard stated at 594:

> Emancipation frees a child from the care, custody and control of his parents. *Stitle v. Stitle* (1964), 245 Ind. 168, 197 N.E.2d 174. While what constitutes emancipation is a question of law, whether there has been emancipation is a question of fact. *Brokaw v. Brokaw* (1980), Ind.App., 398 N.E.2d 1385. The emancipation of a child is never presumed, but must be established by competent evidence. *Brokaw, supra; Hayden v. Hite* (1982), Ind.App., 437 N.E.2d 133.

> . . . . .

> Furthermore, while the decisions may not employ the term "emancipation," it is clear that no emancipation occurs where due to illness or injury a child becomes so physically or mentally disabled that he cannot provide for himself but must remain at home with a parent. *Zakrocki v. Zakrocki* (1945), 115 Ind.App. 556, 60 N.E.2d 745; IC 31-1-11.5-12(d)(2).

In this case, there has been factual testimony by a doctor and a special education teacher indicating Dennis is unable to provide for himself. Our standard of review requires us to view the facts in the light most favorable to the appellee, not to weigh evidence, nor substitute our judgment for that of the trial court. We reverse only if there is a complete failure of evidence supporting the decision below. *Green v. Green* (1983), Ind.App., 447 N.E.2d 605, 610.

Upon finding Dennis incapable of supporting himself, the decision to order Sherman to pay $75 per week in support was not erroneous or against the logic of the facts and circumstances.

Accordingly, we find the trial court acted within its discretion in all respects.

Affirmed.

MILLER, J., concurs.

YOUNG, P.J., concurs with opinion.

YOUNG, P.J., concurring.

I concur, but would summarily affirm the trial court's division of marital property since our review of the exercise of discretion in such cases is meaningless. In rejecting the proposition that our dissolution statute requires a 50–50 division of marital property as a starting point, our supreme court has reinstated the pre-*Luedke* situation in which a trial court's range of choice is virtually limitless and our review little more than pretense. *See Luedke v. Luedke* (1985) Ind. 487 N.E.2d 133, vacating 476 N.E.2d 853.

IND.CODE 31–1–11.5–11(b) directs a trial court to divide marital property in a "just and reasonable" manner after considering the factors listed in paragraphs (1) to (5), but does not specify the weight to be given each factor or define a range of choice. The determination of what is "just and reasonable" is thus left completely to the discretion of the trial court. Consequently, the distribution of assets varies from court to court depending on the predisposition or whim of a particular trial judge. Moreover, the lack of specific directives together with the difficulty of determining what is a "just" distribution greatly increases the temptation of the trial

judge to rely on non-statutory factors. At worst, property is distributed according to who was "good" or "bad", notions of no-fault divorce temporarily having been set aside.

The prospect of appellate review has offered no respite from this situation. As long as it appears the trial court "considered" the statutory factors, an appellate court is hard pressed to find an abuse of discretion. This effective denial of appellate review seriously impacts the many displaced homemakers appearing in our courts who leave the marriage with few marketable skills and, since the demise of alimony, must depend on the property distribution for their financial well-being.

In the midst of this morass, Judge Miller suggested that I.C. 31–1–11.5–11(b)(1) should be interpreted as creating a rebuttable presumption that an even division of marital property between a homemaker and wage earner is equitable. 476 N.E.2d at 864–65. This 50–50 starting point would not only have given trial courts a point from which to begin the consideration of statutory factors, but also would have provided a basis for real appellate review of the trial court's distribution.

With the vacation of *Luedke*, our supreme court has ignored the profound consequences of property distributions to dissolution litigants and restored a situation in which the financial well-being of these parties is left to the good graces of a particular trial judge whose decision is difficult, if not impossible, to overturn on appeal.