The DeKALB COUNTY EASTERN COMMUNITY SCHOOL DISTRICT, Appellant (Plaintiff Below),

v.

DeKALB COUNTY EASTERN EDUCATION ASSOCIATION, Gerald Goen and Sam Reinoehl, Appellee (Defendants Below).

No. 17A03–8703–CV–0082.

Court of Appeals of Indiana, Third District.

Sept. 28, 1987.

H. Charles Winans, Garrett, for appellant.

Janet C. Knapp, Lowe, Gray, Steele & Hoffman, Indianapolis, for appellee.

STATON, Judge.

DeKalb County Eastern Community School District (DeKalb Eastern) appeals the trial court's judgment denying DeKalb Eastern's petition to stay arbitration proceedings and ordering the parties to proceed with arbitration. The sole issue raised by DeKalb Eastern is whether the trial court's judgment is contrary to law.

We reverse.

The facts of this case, as found by the trial court, are:

1. That Petitioner is an Indiana public school corporation created and existing under the laws of the State of Indiana with the power and responsibility to administer the DeKalb county Eastern Community School District and the Northeast Indiana Special Education Co-operative.

2. That Respondent, DeKalb County Eastern Education Association, is a school employee organization as that term is defined by I.C. 20–7.5–1–2(k), and the exclusive bargaining representative for all school employees of DeKalb Eastern.

3. That Respondent Goen is an employee of the Indiana State Teachers Association and at times acts as a representative for the Association.

4. That Respondent Reinoehl is a school employee of DeKalb Eastern and at all times material was the President of the Association.

5. That the Association and DeKalb Eastern entered into a collective bargaining agreement covering the period 1984–85. Under that agreement, the parties agreed to submit unresolved disputes to arbitration.

6. That in January and February of 1985, the Association filed a grievance with DeKalb Eastern on behalf of Sue Szentesy and of all special education teachers who claimed that they had been inappropriately reduced in their contract salary.

7. That the superintendent disposed of the grievance by denying the teachers' claim for additional pay.

8. That the DeKalb Eastern Board of School Trustees considered the grievance and denied the teachers' claim for additional pay.

9. That neither the superintendent nor the School Board asserted that the grievance had been improperly filed.

10. That DeKalb Eastern, along with other school corporations in Northeastern Indiana entered into a Joint Services, Leasing, Construction and Supply Fund Agreement in Special Education for July 1, 1984 to June 30, 1985 (Joint Agreement) with the Northeast Indiana Special Edu-

cation Co-operative (Special Ed Co-op).

11. That Sue Szentesy and others claiming a grievance are members of Special Ed Co-op and are within categories A and B of said Joint Agreement.

12. That the Joint Agreement provides "Teachers in categories A and B shall file grievances through the procedures as outlines (outlined) in the mater (master) contract of their local school corporation".

13. That DeKalb Eastern is the administrative and fiscal agent to administer the Joint Agreement on behalf of all the school corporations who signed the Joint Agreement.

14. That the Joint Agreement on page 5 provides that "Administering School Corporation Responsibilities—5. Assume contractual obligations for personnel employed through the cooperative."

15. That the DeKalb Eastern's Master Contract provides for arbitration.

16. That each of the special education teachers who seek additional pay through the grievances are on contract with DeKalb Eastern as the administering school corporation for the special education cooperative.

17. That DeKalb Eastern has refused to proceed with the arbitration absent a court order.

Based on these findings, the trial court entered the following conclusions of law and judgment:

1. That the Court has jurisdiction of the persons and subject matter of this proceeding.

2. That under the Uniform Arbitration Act, I.C. 34-4-2-3, a court "shall order" the parties to proceed with arbitration upon a showing of a written agreement to submit disputes to arbitration and a showing that the opposing party has refused to arbitrate.

3. That the contract between the Association and DeKalb Eastern, as found by the Court in findings 10 through 16, contains an agreement to submit disputes to arbitration thus raising a presumption of arbitrability.

4. That the Court reasonably finds that the arbitration clause is susceptible of an interpretation that covers the dispute between the special education teachers and their contracting school corporation, DeKalb Eastern.

5. That DeKalb Eastern's Application for Order Staying Arbitration [sic] Proceedings is not supported by sufficient evidence of "no arbitration agreement" to overcome the presumption of arbitrability.

The purpose of special findings is to provide the parties and the reviewing court with the theory upon which the case was decided. We afford special findings a two-tier standard of review: first, we must determine if the evidence supports the findings; and second, we must determine whether the findings support the judgment. If we conclude that the special findings support the judgment and are not clearly erroneous, the judgment will be affirmed. *ITT Industrial Credit Company v. R.T.M. Development Co., Inc.* (1987), Ind.App., 512 N.E.2d 201. (Citations omitted.)

The findings are accepted by both parties and, as a review of the record shows, are supported by the evidence. A judgment is clearly erroneous if a review of the record leaves this Court with a definite and firm conviction that a mistake has been made. *City of Mishawaka v. Squadroni* (1985), Ind.App., 486 N.E.2d 1088, 1092, *trans. den.*

Under Indiana law, the trial court shall order the parties to proceed with arbitration on a showing of an agreement to arbitrate between the parties. IC 34-4-2-3(a). The Court may also stay an arbitration proceeding on a showing that there is no agreement to arbitrate. The Court should order a stay upon a finding of no agreement. IC 34-4-2-3(b).[1]

---

1. Sec. 3. (a) On application of a party showing an agreement described in section 1 of this

DeKalb Eastern contends that the order to arbitrate is contrary to law because the facts do not support the conclusion that an agreement to arbitrate exists between De-Kalb Eastern and the special education co-op teachers. Specifically, DeKalb asserts that the trial court confused the facts in reaching the conclusion that an agreement does exist. A review of the record compels us to agree with DeKalb Eastern that the trial court erred.

The trial court concluded: "3. That the contract between the Association and De-Kalb Eastern, as found by the Court in findings 10 through 16, contains an agreement to submit disputes to arbitration thus raising a presumption of arbitrability." The contract referred to in findings 10 through 14 is the Joint Services Agreement (Joint Agreement) executed by the several school corporations to form the special education co-operative. The record contains no evidence that the Joint Agreement was entered into between DeKalb Eastern and the Association. The contract referred to in finding 15 is the collective bargaining agreement between DeKalb Eastern and the Association. (See finding # 5). The contract referred to in finding 16 is the employment contract between the co-op teachers and the Special Ed Co-op.

While the contract between DeKalb Eastern and the Association does contain an agreement to arbitrate, nothing in the Joint Agreement can be construed to be an agreement to arbitrate between DeKalb Eastern and the Association. Likewise, the record contains no evidence that the employment contract contains an agreement to arbitrate between DeKalb Eastern and the Association. The only evidence regarding the employment contract is testimony that DeKalb Eastern signed the contracts as the administrative agent for the Special Ed Co-op.

The trial court's conclusion is ambiguous because it is not clear which contract the trial court meant to conclude had an agreement to arbitrate. If the trial court really meant the Joint Agreement, or the employment contract, a conclusion that an agreement to arbitrate is clearly erroneous. If the trial court meant the collective bargaining agreement, then clearly an agreement to arbitrate does exist. However, even under this view the trial court's judgment cannot stand.

As findings 11 and 12 indicate, the teachers on whose behalf arbitration is sought are members of the Special Ed Co-op formed pursuant to the Joint Agreement. The Joint Agreement provides for four categories of teachers. All of the teachers concerned in this case fall into categories A and B. The Joint Agreement further provides for the procedure for filing grievances by teachers. The teachers in categories A and B should file grievances as outlined in the master contract of their local school corporations, which means where they actually teach. The Joint Agreement also provides that for purposes of collective bargaining the teachers in categories A and B are members of the bargaining unit in their local school corporation. The record discloses undisputed evidence that none of the teachers filing grievances in this case actually teach in DeKalb Eastern. Therefore, pursuant to the Joint Agreement, they are not members of the bargaining unit represented by the Association.

The process for determining bargaining units and exclusive representatives in Indiana is covered by statute. IC 20–7.5–1–10(a)(1) provides:

chapter, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration. Ten (10) days' notice in writing of the hearing of such application shall be served personally upon the party in default. If the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised without further pleading and shall order arbitration if found for the moving party, otherwise, the application shall be denied.

(b) On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Ten (10) days' notice in writing of the hearing of such application shall be served personally upon the party in default. Such an issue, when in substantial and bona fide dispute, shall be forthwith summarily determined without further pleadings and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.

Sec. 10. (a) The exclusive representative shall serve for school employees within certain groups referred to in this chapter as units or bargaining units. No bargaining unit shall contain both certificated and noncertificated employees. Subject to this limitation, the units for which an exclusive representative shall serve shall be determined as follows:

(1) The parties may agree on the appropriate unit. For this purpose the parties shall consist of the school employer and a school employee organization representing twenty percent (20%) or more of the school employees in any proposed unit.

This means that the parties may agree on which employees will be represented by an exclusive bargaining representative. The record contains no evidence of an agreement that these special ed co-op teachers would be members of the DeKalb Eastern bargaining unit represented by the Association. In fact, the evidence is clearly to the contrary. The Joint Agreement reveals that the appropriate bargaining unit for the teachers involved would be the bargaining units of their local school corporation.[2]

Because the teachers are not recognized members of the bargaining unit represented by the Association, no basis exists for the trial court to conclude that the agreement to arbitrate between DeKalb Eastern and the Association is susceptible of an interpretation that covers the grievances for the special ed co-op teachers in this case. Upon the showing by DeKalb Eastern that an agreement to arbitrate does not exist, the trial court should have granted the petition to stay arbitration proceedings. IC 34-4-2-3(b).

The trial court's judgment is reversed.

GARRARD, P.J., and HOFFMAN, J., concur.

---

2. The record indicates that the Indiana State Teacher's Association, representing several local associations, negotiated with the Special Ed Co-op for the provisions in the Joint Agreement determining the appropriate bargaining units for the co-op teachers. Thus, an agreement was reached by the appropriate parties pursuant to IC 20-7.5-1-10(a)(1).