**WRIGHTS BEAUTY COLLEGE, INC., Appellant–Defendant,**

v.

**Rick BOSTIC, Appellee–Plaintiff.**

No. 34A02–9010–CV–581.[1]

Court of Appeals of Indiana, Fifth District.

Aug. 19, 1991.

---

1. This case has been diverted to this office by order of the Chief Judge.

trial court's order mandating that it allow the plaintiff, Rick Bostic, to inspect and copy certain corporate records and papers pursuant to IND.CODE § 23–1–52–2. We affirm.

On appeal, the corporation raises two issues. We consolidate and restate these issues into the following single issue:

Was Bostic entitled to inspect and copy the disputed documents under the terms of I.C. § 23–1–52–2?

We restate the facts most favorable to the trial court's order. Bostic first became associated with the corporation in 1978, when the corporation made him the director of one of its schools. In 1984 Bostic and his wife Kathy acquired stock in the corporation and joined Martin and Vicky Wagoner as the only shareholders.

The corporation discharged Bostic from his position of school director in February of 1990. At the time of his removal, the shareholders in the corporation consisted of the Wagoners, the Bostics, and one additional shareholder, Don Wagoner.

Following his dismissal, Bostic requested that the corporation allow him to inspect and copy certain corporate documents. The corporation allowed Bostic to view some of the documents, but refused to allow him to view most of them. The documents the corporation allowed him to view indicated that he and his wife owned ten percent of the outstanding corporate shares. Bostic had believed that he and his wife were owners of twenty-five percent of the shares.

Following the corporation's refusal to allow inspection of the documents, Bostic sent a letter to Martin Wagoner, the president of the corporation, in which he repeated and augmented his request for documents. This letter reads, in relevant part:

\*     \*     \*     \*     \*     \*

SHARPNACK, Judge.

Defendant Wrights Beauty College, Inc. (hereinafter "the corporation") appeals the

1. We want a complete copy of the following together with the present records of payment of the following:

a. All loans to Lafayette Bank and Trust.

b. All loans to Summit Bank and Trust.

c. All loans to First Federal Bank, Kokomo.

d. All loans to First National Bank of Logansport.

e. All loans to Farmers and Merchants Bank of Logansport.

2. First Federal Bank's commitment for the property at 208 West Jefferson, Kokomo, Indiana together with all appraisals made in connection.

3. All purchase agreements with Theresa Behny for the Wabash Beauty School.

4. All purchase agreements with Josie Miller for Indiana Beauty College.

5. Rudaes purchase agreement with C.L. Craft and Wright Beauty College, Inc.

6. A record of all financial transactions between Wright Beauty College, Inc., Don Wagoner, and Lafayette Bank and Trust. Including the Assignment of Contract from Wright Beauty College, Inc. to Don Wagoner and assignment of Don Wagoner to Lafayette Bank and Trust and payment of Lafayette Bank and Trust to Don Wagoner, and Don Wagoner's payment to Wright Beauty College, Inc.

8. All documents showing the Assignment of Contract to purchase real estate at 610 North Washington, Kokomo, Indiana between Wright Beauty College, Inc. and Don Wagoner.

9. Lease agreement between Wright Beauty College, Inc. and EMPT.

10. Profit and loss balance sheet for the last 24 months of Wright Beauty College, Inc. and its subsidiaries.

11. All statements for the last 12 months showing the deposits of tuition, receipts, and booth rent.

12. A copy of all financial statements of any individual used by Wright Beauty College, Inc. for the purpose of obtaining credit for the last 24 months.

\* \* \* \* \* \*

(Record, p. 24–25).

When the corporation refused Bostic's renewed request, he filed this action seeking an order compelling the corporation to permit him to inspect and copy the disputed documents. In his complaint, Bostic alleged that he needed the documents in order to evaluate his present and potential liability for loans which he had signed on behalf of the corporation in his corporate and personal capacities and to evaluate his holdings in the corporation. In addition, he testified at trial that, because the corporation was closely held and had the right of first refusal on any sale of stock, his stock had no market value and he needed the information in order to value his stock in preparation for sale.

■ The trial court, pursuant to the corporation's motion, entered findings of fact and conclusions of law. Our standard of review of a judgment supported by requested findings and conclusions is twofold. We first determine whether the evidence on the record supports the findings, and, if so, we then determine whether the findings support the judgment. *DeKalb County Eastern Community School District v. Dekalb County Eastern Education Association* (1987), Ind.App., 513 N.E.2d 189, 191. If the record supports the findings—that is to say, if the findings are not clearly erroneous—and if the findings support the judgment, we must affirm. *Id.*

Bostic claimed a right to inspect the disputed documents under I.C. § 23–1–52–2. This statute provides, in relevant part:

(b) A shareholder of a corporation is entitled to copy, during regular business hours at a reasonable location specified by the corporation, any of the following records of the corporation if the shareholder meets the requirements of subsection (c) and gives the corporation written notice of the shareholder's demand at least five (5) business days before the

date on which the shareholder wishes to inspect and copy:

 \*    \*    \*    \*    \*    \*

(2) Accounting records of the corporation.

 \*    \*    \*    \*    \*    \*

(c) A shareholder may inspect and copy the records identified in subsection (b) only if:

(1) the shareholder's demand is made in good faith and for a proper purpose;

(2) the shareholder describes with reasonable particularity the shareholder's purpose and the records the shareholder desires to inspect; and

(3) the records are directly connected with the shareholder's purpose.

The corporation argues that Bostic is not entitled to view the disputed documents because the disputed documents are not directly connected to a proper purpose allowed by our corporate law. The corporation notes that Bostic's complaint identifies three reasons for his request to view the records: 1) to fulfill his obligations as a member of the board of directors; 2) to determine whether he bears any individual liability for loans for which he had signed both individually and as an officer of the corporation; and 3) to evaluate his holdings in the corporation. The corporation argues that none of these reasons identify a proper purpose for inspection.

Under the common law of this state, a shareholder had the right to inspect corporate documents upon a showing of a proper purpose related to the interests of the shareholder. *Charles Hegewald Co. v. State ex rel. Hegewald* (1925), 196 Ind. 600, 605–606, 149 N.E. 170, 173. Modern statutes, like the common law, impose the requirement that the request be related to a proper purpose. *Dynamics Corp. of America v. CTS Corp.* (1985), Ind.App., 479 N.E.2d 1352, 1353–1354. We must therefore determine whether any evidence supports the trial court's finding that Bostic asserted a proper purpose for viewing and copying the disputed documents.

In his testimony at trial, Bostic stated that he needed the information concerning the corporate liabilities in order to properly value his stock. He introduced into evidence the corporation's articles of incorporation, which specifically provided that the corporation has the right of first refusal whenever a shareholder desires to sells shares of the corporation's stock. The articles empower the corporation to make an offer to buy as much of the stock as it wishes at whatever price it is willing to pay. The shareholder has the right to refuse to accept the offer, in which case the articles provide that arbitrators shall fix the purchase price after making an "examination of the assets and financial records of the corporation...." Because the corporation has the right of first refusal, and because the stock is closely held and not publicly traded, it is impossible to determine a value for the stock by reference to a market. Bostic essentially argues that he has no recourse but to examine the documents in order to determine whether to accept the corporation's offered price or to refuse and send the sale to arbitration.

In *Hegewald*, the supreme court rejected a shareholder's claim that she needed to examine certain documents in order to value her stock for tax purposes. The court found that valuation was not a proper purpose in her case because she had no duty to value the stock for tax purposes. The court noted that the duty to value lay with the government and not with the shareholder:

*[W]here the relatrix is not charged with any legal duty to ascertain the value of her stock for inheritance tax purposes, but the duty to learn all pertinent facts and fix such value is imposed by law upon a public officer who has full power to investigate and examine witnesses, and would not be bound by any investigation which the relatrix might make or any conclusion she might reach,* the mere fact that she desires to know such value in order that she may pay the inheritance tax does not charge the corporation with a clear, legal duty to submit its books to accountants on her behalf.

196 Ind. at 607, 149 N.E. at 173 (emphasis added).

Here, no public officer is charged with the duty to value Bostic's stock. The articles do provide that the value of the stock is to be determined by arbitrators if Bostic refuses a price offer tendered by the corporation, but we do not believe that the arbitration provision should act to prohibit him from attempting to determine the value of his stock before arbitration. Bostic must have some idea of the value of his stock before he can decide intelligently whether the corporation's offered price is fair.

Because we have determined that this case falls outside the rule announced in *Hegewald,* and because we have found no Indiana case which has decided whether valuation is a proper purpose in circumstances like those presented by this case, we have looked for guidance to the law of other jurisdictions. Our research reveals that a majority of states have determined that valuation is a proper purpose.

In *Helmsman Management Services, Inc. v. A & S Consultants, Inc.* (1987), Del.Ch., 525 A.2d 160, the court considered whether the valuation for sale of the stock of a corporation where the stock was closely held and not publicly traded, and where the corporation had the right of first refusal in any stock sale, constituted a proper purpose for inspection of the corporate records. The court, citing a decision of the Supreme Court of Delaware, *CM & M Group v. Carroll* (1982), Del., 453 A.2d 788, held that valuation was normally a proper purpose, and could be a proper purpose even where the shareholder had not yet definitely decided to sell the stock. The court wrote:

> Of some concern is the fact that [the shareholder's] valuation purpose is, at the present time, somewhat academic. It is not sufficient for [the shareholder] merely to assert that it would like to value [the corporate] stock. Without a showing of a present need for such a valuation, a mere statement of that purpose, though valid in law, might not be *bona fide* in fact. At this point [the shareholder] has made no decision to dis-

pose of its [corporate] stock, has taken no steps to market the stock, and has no potential buyer for it. [citation omitted]. *On the other hand, this Court has recognized that there may be situations where a shareholder in a closely-held corporation needs to value his stock to enable him to decide whether or not to sell, and, if so, on what terms.* [citation omitted]. It is clearly inferable from the evidence that this is such a case. There is a very limited market for [the stock]; *indeed, given the corporation's right of first refusal, the only potential buyer may be [the corporation itself]. For that reason, [the shareholder] must necessarily resort to [the corporate] books and records to establish a value as a predicate for deciding whether its stockholdings are marketable and, if so, on what terms.* Those considerations, plus [the shareholder's] interest in extricating itself from a minority stockholder position in a corporation with which it is no longer in a friendly relationship, persuade me that [the shareholder's] purpose is valid in fact as well as in law.

*Helmsman Management,* 525 A.2d at 165 (emphasis added). Other courts which have considered the issue have agreed that valuation is a proper purpose. *State ex rel. Fussell v. McLendon* (1959), Fla.App., 109 So.2d 783, 786; *E.I.F.C., Inc. v. Atnip* (1970), Ky., 454 S.W.2d 351, 352; *Fownes v. Hubbard Broadcasting, Inc.* (1975), 302 Minn. 471, 473–474, 225 N.W.2d 534, 536; *Glassman v. Louis Shiffman, Inc.* (1977), 56 A.D.2d 824, 824–825, 393 N.Y.S.2d 33, 34; *Cooke v. Outland* (1965), 265 N.C. 601, 615, 144 S.E.2d 835, 845.

The trial court found that the requested documents are necessary for Bostic to value his stock in preparation for sale. There is evidence to support this finding, and, because we cannot say that it is clearly erroneous, we conclude that the request for documents was reasonably related to the valuation of the stock. Furthermore, because we hold that valuation is a proper purpose for inspecting corporate documents under the terms of our statute, the court's finding that the documents are necessary for valuation supports its judg-

ment ordering the corporation to allow inspection and copying. Because the findings are not clearly erroneous, and because they support the judgment, we affirm the judgment of the trial court.

AFFIRMED.

RUCKER and CHEZEM, JJ., concur.