Muriel KAUFMAN, Plaintiff,

v.

CA, INC., Defendant.

C.A. No. 699–N.

Court of Chancery of Delaware,
New Castle County.

Submitted: July 25, 2006.
Decided: Aug. 23, 2006.

Craig B. Smith, Etta R. Wolfe, Smith Katzenstein & Furlow, L.L.P., Wilmington, DE; Scott W. Fisher, Jan Bartelli, Garwin Gerstein & Fisher, L.L.P., New York City, for the Plaintiff.

Robert K. Payson, Stephen C. Norman, Potter Anderson & Corroon, L.L.P., Wilmington, DE; Robert J. Giuffra, Jr., Tracy Richelle High, William B. Monahan, Sullivan & Cromwell, L.L.P., New York City, for the Defendant.

## OPINION AND ORDER

LAMB, Vice Chancellor.

This motion to compel arises because the stockholder of a troubled corporation sought to exercise her rights under 8 *Del. C.* § 220 to investigate the books and records of the company. After having initially resisted the demand on the basis of a Special Litigation Committee's concurrent investigation, the corporation then agreed to respond to the stockholder's requests, subject to some restrictions. While the corporation has produced considerable documentation, the stockholder believes that she is due further documents under Section 220. In this opinion, the court concludes that the stockholder has failed to sufficiently articulate why the additional documents are either necessary or essential to her concededly proper purpose, and thus fails to meet the standard of Section 220 under Delaware law. Thus, the stockholder's motion to compel must be denied.

### I.

#### A. *Factual Background*

As the court explained in a previous opinion,[1] this case arises from a series of financial accounting scandals that have wracked Computer Associates, now known as CA, Inc., since the federal government began to probe CA's accounting practices in 2002. In July 2003, CA responded to the increasing pressure imposed by that federal investigation, as well as a series of civil lawsuits, when the board of directors empowered the Audit Committee to conduct an internal investigation. That committee immediately hired the law firm of Sullivan & Cromwell ("S & C") as its special counsel.

On August 8, 2003, after only a month of investigation by the Audit Committee, the company agreed to settle all pending civil litigation arising from the accounting frauds. Those settlements included broad releases from financial liability for various executives, including Sanjay Kumar, then the company's Chief Executive Officer, Ira Zar, the company's Chief Financial Officer, Steven M. Woghin, CA's former General Counsel, and Stephen Richards, the company's former Executive Vice President and General Manager of Sales. Although the internal investigation could not have been very far advanced, the settlements were approved by the Audit Committee, among other committees, and also by all non-interested, independent directors who were not named in any of the suits. A notice of the proposed settlements was issued to the stockholders, and the settlements were approved by the federal court in December 2003.

Contemporaneously with the settlements, however, new information began to come to light that indicated continuing financial fraud at CA. The Audit Committee included this new information in its internal investigation. On October 8, 2003, the company announced that the Audit Committee had delivered its preliminary report, which showed that the company had falsely booked material revenues for the

1. *Kaufman v. Computer Assoc. Int'l, Inc.,* 2005 WL 3470589 (Del.Ch. Dec. 13, 2005).

2000 fiscal year. Acting on that information, the board recommended to Kumar that Zar, Lloyd Silverstein (a CA executive), and David Rivard (a vice president of accounting) be fired. Shortly thereafter, all three were indicted on a variety of securities fraud charges. Silverstein pleaded guilty in January 2004, and both Zar and Rivard followed on April 8, 2004.

The Audit Committee's investigation in the following months reaffirmed not only the information contained in the preliminary report, but showed evidence of fraudulent activity throughout CA's management, reaching to the highest levels. On April 26, 2004, the Audit Committee presented its final report, announcing that the company had improperly recognized $2.2 billion in revenue for fiscal years 2000 and 2001. In connection with that report, the board removed Kumar as CEO, Chairman, and President of CA, and also removed Richards from his position. Although Kumar was briefly retained as "Chief Software Architect," he was later dismissed from all positions at CA on June 3, 2004.

Kumar and Richards were indicted by the government on charges of securities fraud, perjury, and obstruction of justice on September 22, 2004. Both men pleaded guilty on April 24, 2006. Also on September 22, 2004, Woghin pleaded guilty to conspiracy to commit securities fraud and obstruction of justice. In response to these revelations, a new set of derivative suits were filed in New York alleged that the corporation's directors violated their fiduciary duties in approving the 2003 settlements, and thus granting several former members of management who were later indicted for crimes complete civil financial immunity from the consequences of their actions. The present plaintiff, Muriel Kaufman, has filed her own motion in New York under Federal Rule of Civil Procedure Rule 60(b), seeking to vacate the releases provided in those settlements.

### B. *Kaufman's Section 220 Case*

In addition to filing her Rule 60(b) motion, on August 11, 2004, the plaintiff issued a demand letter seeking inspection of CA's books and records. When her demand was refused, she filed this action under 8 *Del. C.* § 220. Kaufman demands four categories of documents for the stated purpose of:

Determin[ing] whether any or all of the Individual Officers and/or Directors have breached fiduciary duties and wasted corporate assets by a) causing the Company to pay all the consideration in connection with the resolution in August 2003 of certain security and ERISA class action litigation, in which those who committed the accounting manipulations were fully released from liability and the Company was caused to give up its rights of contribution against the responsible parties and b) participating and/or aiding and abetting the obstruction of a government investigation, thereby exacerbating the penalties the Company is likely to be assessed in connection with any resolution of that investigation.[2]

On December 13, 2005, this court denied CA's motion to stay the plaintiff's demand in favor of the Special Litigation Committee's investigation.[3] Thereafter, CA agreed to produce the requested documents, subject to any applicable privileges.[4] As a result, CA has produced a wide range of documents. Most crucially, this production included (1) lightly redacted copies of minutes of meetings of CA's

**2.** Giuffra Aff. Ex. 15 at 3.

**3.** *Kaufman,* 2005 WL 3470589.

**4.** Kaufman Letter, Feb. 28, 2006.

board of directors and Audit Committee from April 1, 1998 through April 30, 2004;[5] (2) correspondence between CA's former counsel, Wachtell, Lipton, Rosen & Katz ("WLRK"), and the government concerning the government investigation of CA's past accounting practices; (3) chronologies of 42 CA license agreements CA entered into during CA's fiscal year 2000 for which CA prematurely recognized the associated revenue; (4) summaries of the five Audit Committee interviews of Kumar and Richards; and (5) talking points prepared by WLRK in connection with oral briefings to the government and to CA's board of directors concerning the government investigation.[6]

### C. *Kaufman's Motion To Compel*

The plaintiff has filed this motion to compel because she believes she is entitled to certain documents that CA refuses to produce. Two broad categories of documents which have been entirely withheld are particularly at issue. The first consists of certain documents, produced to the government under a confidentiality agreement, including 48 interview summaries prepared by S & C in connection with the Audit Committee's investigation. Five additional interview summaries, those of Kumar and Richards, have been produced to Kaufman by CA.[7]

The second category consists of six documents that were included among the millions of documents in an electronic database CA made available to Kumar's and Richards's criminal defense attorneys at the request of the United States Attorneys' Office, pursuant to what the company calls a "clawback agreement."[8] Specifically, these documents include (1) two drafts of a memorandum concerning S & C's August 4, 2003 meeting with the government;[9] (2) the final version of the memorandum concerning the August 4, 2003 meeting;[10] (3) a draft and final version of a memorandum reflecting the advice of S & C and WLRK regarding the ongoing government investigation, and regarding S & C's September 4, 2003 meeting with the government;[11] (4) a draft

---

**5.** All the minutes that were redacted and produced to Kaufman were produced in the same form as they were produced to Kumar and Richards in connection with their criminal investigation. Letter from Robert Giuffra to Jan Bartelli at 1 (June 28, 2006), Kaufman Reply Br. Ex. 3.

**6.** Again, these minutes were produced to Kaufman in the same form as they were produced to Kumar and Richards for use in their defense. They have been redacted only as to one of the talking points. Letter from Robert Giuffra to Jan Bartelli at 2 (June 28, 2006), Kaufman Reply Br. Ex. 3.

**7.** These include interview summaries prepared by S & C of the Audit Committee interviews of David Kaplan, Chuck McWade, Ira Zar, and Michael McElroy. Letter from Jan Bartelli to Robert Giuffra, at 2 (June 22, 2006), Kaufman Reply Br. Ex. 1.

**8.** Unlike a traditional clawback agreement, which allows parties to demand the return of inadvertently produced privileged documents, the clawback agreement in this case, which was negotiated in the context of virtual certainty that privileged documents were included in the massive "Forensic Database Materials" provided to Kumar and Richards, gives CA "standing to intervene in the [criminal action] to assert a claim that [produced materials] should be protected from any further disclosure under any un-waived claim of attorney client privilege or attorney work-product protection, and/or should be returned to CA." Giuffra Aff. Ex. 3 ¶ 5.

**9.** The parties have kept track of the documents being requested and provided, as is standard in such litigation, by means of a privilege log. These two documents are designated no. 1 and no. 2 on that document. Kaufman Opening Br. Ex. B.

**10.** This is document no. 3 on the privilege log.

**11.** These are documents no. 7 and no. 8 on the privilege log.

presentation prepared by PricewaterhouseCoopers LLC at the request of S & C in connection with the Audit Committee investigation.[12]

In addition, Kaufman continues to demand unredacted versions of the key documents already produced, including minutes from the CA board of directors meetings of July 22, 2002, June 18, 2003, December 3, 2003, February 1, 2004, and April 20, 2004, and an unredacted copy of the revised version of the WLRK talking points.[13]

The plaintiff believes that these documents are within the scope of her Section 220 demand.[14] Indeed, the plaintiff argues that "[i]t is facially evident that all of the withheld information set forth above is directly responsive to [her] Demand."[15] On that basis, Kaufman seeks an order requiring CA to turn over all those documents.

## II.

This case arises in the somewhat unique procedural posture of a motion, styled as one to compel, in a Section 220 case in which the defendant has conceded the propriety of the plaintiff's demand and has already furnished substantial documentation to the plaintiff. This motion thus requires the court to consider issues that usually arise in the course of a substantive Section 220 proceeding.

 The standard for a books and records demand under Section 220 is well known. As this court has explained, Delaware law allows a stockholder a statutory right to inspect the books and records of a corporation so long as certain formal requirements are met, and the inspection is for a proper purpose.[16] Moreover, relief under Section 220 is limited only to the inspection of books and records that are necessary and essential to the satisfaction of the stated purpose.[17] To summarize the meaning of our cases as to this latter prong, when a books and records action is brought with the goal of evaluating a possible derivative suit, the books and records that satisfy the action are those that are required to prepare a well-pleaded com-

12. This is document no. 18 on the privilege log.

13. Letter from Jan Bartelli to Robert Giuffra, at 1 (June 22, 2006), Kaufman Reply Br. Ex. 1.

14. In addition to arguing that the documents at issue are outside the scope of a books and records action, CA argues that all of those documents are protected either by work-product or attorney client privilege. Kaufman believes, for various reasons, that CA's privileges as to the two broad categories of documents have been waived or are otherwise inapplicable. Indeed, the parties concentrated their argument in both their papers and at oral argument on the applicability of privilege.

The court acknowledges the complex issues of privilege that these arguments raise, but does not reach those questions because it agrees with CA that Kaufman's continued demands fall outside the scope of a properly stated books and record action. Nonetheless, the court notes the continued relevance and importance of *Saito v. McKesson HBOC, Inc.*, 2002 WL 31657622 (Del.Ch. Oct. 25, 2002), in which this court held as a matter of Delaware law that the attorney client privilege is not waived as to adverse third parties when documents are disclosed to the SEC (or to some other governmental authority) under the color of a confidentiality agreement.

15. Kaufman Reply Br. 10.

16. *Grimes v. DSC Commc'ns*, 724 A.2d 561 (Del.Ch.1998); DONALD J. WOLFE, JR. & MICHAEL A. PITTENGER, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY § 8.6(g) (2005).

17. *Highland Select Equity Fund v. Motient Corp.*, 2006 WL 1903129, *7 (Del.Ch. July 6, 2006) (citing *CM & M Group v. Carroll*, 453 A.2d 788, 793–94 (Del.1982)).

plaint. Of course, this means that Section 220 is not meant as a replacement for discovery under Rule 34.[18]

This court has previously applied those principles in Section 220 cases involving investigations by independent committees. In *Grimes v. DSC Communications Corp.*,[19] most importantly, a Section 220 plaintiff sought a wide range of documents for the purpose of testing the independence and efficacy of a special committee.[20] The court held that the committee's "report, minutes of the meetings of the Special Committee, and minutes of any meeting of the board relating to the creation or functioning of the Special Committee, including any meeting of the board of directors at which the recommendation of the Special Committee was considered or approved" were part of a proper Section 220 inspection.[21] But, the court observed, production under Section 220 is limited:

> Ordinarily, these basic documents should suffice for the purposes of establishing or raising reasonable grounds for suspicions about a special committee's independence, good faith, and due care. Thus, I conclude that the plaintiff is not entitled to receive or examine copies of other documents not directly related to the Special Committee's conclusions and recommendations unless he can articulate a reasonable need to inquire further after review of those basic documents. For example, I will require a further showing of need before requiring DSC to produce to Grimes interview summaries prepared by counsel to the Special Committee.[22]

■ The present motion can be decided on the same principles. The defendant has received from CA a wide range of highly probative documents, including lightly redacted notes of all board meetings from the entire period in which any misconduct could have occurred, internal documents laying out CA's legal strategy, WLRK's talking points to present to the government, and even summaries of interviews conducted with central figures in the fraud. Many of these documents have been provided in the same form as was provided to Kumar and Richards for use in their criminal defenses. In compliance with *Grimes*, therefore, the plaintiff has been given a wide range of basic documents that should provide her with a substantial basis to investigate potential misconduct at CA. Moreover, CA has offered to produce voluminous quantities of other documents, such as all the documents that CA produced to Kumar and Richards in hard copy. Certainly, many of these documents are not responsive to the demand, as they provide information more relevant to the subject of the settled 2003 suits than to the new questions raised by the releases. But it is nonetheless true that the limited documents Kaufman continues to demand fall well outside the traditional reach of Section 220 as articulated in *Grimes*.

■ In the face of that presumption, the plaintiff has not explained, either in her papers or at oral argument, why the re-

---

**18.** *See Security First Corp. v. U.S. Die Casting and Dev. Co.*, 687 A.2d 563 (Del.1997).

**19.** 724 A.2d at 561.

**20.** Among the documents the board had refused to provide were "documents referring or relating to interviews conducted by the Special Committee," "documents referred or relating to meetings held by the Special Committee or actions taken by the Committee in lieu of a meeting, including minutes of such meetings." *Id.* at 565 n. 5.

**21.** *Id.* at 567.

**22.** *Id.*

maining documents are either necessary or essential to her proper investigative purpose under Section 220, other than to claim that such need is self-evident. But that argument conflates the usefulness or responsiveness of further discovery, which even CA would concede, with the proper standard of necessity under Section 220. That a document would be potentially discoverable under Rule 34 does not make it necessary and essential under Section 220.

To the extent Kaufman's briefs address this threshold issue at all, they show only that Kaufman has been able to plead with stark particularity the circumstances that have led her to develop fully justifiable and credible suspicions of wrongdoing at CA. It is perhaps for that reason that Kaufman has been so reluctant, or unable, to articulate a specific need for the documents she continues to demand. Moreover, while CA has resisted Kaufman's demand in certain respects, it has provided, and has committed on the record to provide, further responsive documents that go directly to Kaufman's proper investigative purposes. In those circumstances, the court concludes that Kaufman has failed to satisfy the standard for a books and records action as to the particular documents at issue in this motion.

### III.

For those reasons, the plaintiff's motion to compel is DENIED. IT IS SO ORDERED.