**BACOMPT SYSTEMS, INC.,**
Appellant–Defendant,

v.

**Angelina PECK and David C. Peck,**
Appellees–Plaintiffs.

No. 29A02–0708–CV–646.

Court of Appeals of Indiana.

Jan. 9, 2008.

Deborah J. Caruso, Gregg S. Gordon, Dale & Eke, P.C., Indianapolis, IN, Attorneys for Appellant.

Peter S. Kovacs, Stewart & Irwin, P.C., Indianapolis, IN, Attorney for Appellee Angelina Peck.

John D. Waller, Maureen E. Ward, Wooden & McLaughlin LLP, Indianapolis, IN, Attorneys for Appellee David C. Peck.

## OPINION

BRADFORD, Judge.

Appellant–Defendant, Bacompt Systems, Inc., appeals the trial court's judgment granting the petition of Appellees–Plaintiffs, Angelina Peck and David Peck, .to inspect Bacompt's corporate records. Bacompt argues on appeal that the trial court abused its discretion in granting the Pecks's petition because the Pecks failed to establish that their demand to inspect Bacompt's records complied with Indiana Code section 23–1–52–2 (2006). We reverse and remand.

## BACKGROUND FACTS AND PROCEEDINGS

Bacompt is a closely-held Indiana Corporation with its principal place of business located in Hamilton County. The Pecks, who reside in Pennsylvania, own approximately twenty-five percent of Bacompt's stock. Buddy C. Stanley is the principal shareholder of Bacompt. Stanley, his wife, and their children allegedly own the remaining seventy-five percent of Bacompt's stock.

Beginning in approximately 1995, David Peck was employed as the President of Bacompt, but his position as President terminated in May 2006. On June 1, 2006, David allegedly wrote a message to Bacompt's counsel suggesting his belief that Bacompt was "being sold." App. p. 73. On June 26, 2006, Bacompt initiated an action in Hamilton County against the Pecks, claiming that David wrote unauthorized Bacompt checks totaling at least $835,902.30 for his and Angelina's personal use. This action, which was apparently removed to federal court, is still pending. Prior to the initiation of this lawsuit and during David's tenure as President, on November 17, 2005, Angelina allegedly filed a divorce action against David in Pennsylvania.

On July 18, 2006, David, through his attorney, served a demand upon Bacompt to inspect certain corporate records. The stated reason for the demand was David's belief that "Mr. Stanley has either directly or indirectly misappropriated funds from Bacompt[.]" App. p. 77. On November 15, 2006, David executed a confidentiality agreement pursuant to Bacompt's agreement to provide him with requested records. On February 23, 2007, David, through a new attorney who appeared to represent both David and Angelina, again demanded to inspect Bacompt's records and specifically requested all "audit/re-

view" documents. On this same date, Angelina separately demanded to inspect Bacompt's corporate records for the stated reason of "appropriately valuat[ing] her stock holdings in both Bacompt [and another company]." App. p. 100. On February 26, 2007, Bacompt responded to these demands by noting that David's February 23 request failed to specify a purpose for inspection and by further observing that Angelina's request was untimely. Bacompt agreed to make most of the requested documents available to both David and Angelina on February 28, 2007, provided that Angelina sign a confidentiality agreement.

Bacompt refused, however, to provide a certain "KSM report" which the trial court found, and the parties do not dispute, is "a report prepared by [Bacompt's] outside accountant, Katz, Sapper and Miller ... which includes an analysis relating to the checks which are the subject of the Federal District Court litigation, as well as a review of other expenses charged to Bacompt in the relevant period of 2003 through 2005." App. p. 6.

Following Bacompt's requirement that Angelina sign a confidentiality agreement and its refusal to provide the KSM report for review, attorneys for both David and Angelina cancelled their scheduled February 28, 2007 inspection of Bacompt's records.

On March 2, 2007, the Pecks filed a Petition for Inspection of Corporate Records. Following Bacompt's March 23 response, on March 26 the Pecks filed a prehearing brief in support of their petition, attached to which was an affidavit from Angelina stating, *inter alia*, that she needed access to Bacompt's corporate records in order to value her stock in her pending divorce proceeding with David. On March 27, the day of the hearing, Bacompt filed a motion to strike Angelina's affidavit.

Following the hearing, on May 29, 2007, the trial court denied Bacompt's motion to strike, granted the Pecks's petition, and entered a protective order covering the records which the Pecks were permitted to inspect. Bacompt filed a June 12, 2007 motion to correct error, which the trial court denied on July 2, 2007. This appeal follows.

## DISCUSSION AND DECISION

Bacompt argues on appeal that the trial court erred in determining that the Pecks had demonstrated pursuant to Indiana Code section 23–1–52–2 that their demand to inspect Bacompt's corporate records was in good faith and for a proper purpose. Indiana Code section 23–1–52–2 provides, in pertinent part, as follows:

(b) A shareholder of a corporation is entitled to inspect and copy, during regular business hours at a reasonable location specified by the corporation, any of the following records of the corporation if the shareholder meets the requirements of subsection (c) and gives the corporation written notice of the shareholder's demand at least five (5) business days before the date on which the shareholder wishes to inspect and copy:

(1) Excerpts from minutes of any meeting of the board of directors, records of any action of a committee of the board of directors while acting in place of the board of directors on behalf of the corporation, minutes of any meeting of the shareholders, and records of action taken by the shareholders or board of directors without a meeting, to the extent not subject to inspection under subsection (a).

(2) Accounting records of the corporation.

(3) The record of shareholders.

**4**

(c) A shareholder may inspect and copy the records identified in subsection (b) only if:

(1) the shareholder's demand is made in good faith and for a proper purpose;

(2) the shareholder describes with reasonable particularity the shareholder's purpose and the records the shareholder desires to inspect; and

(3) the records are directly connected with the shareholder's purpose.

Bacompt further argues that the trial court erred in determining that the KSM report was an accounting record properly subject to the Pecks's inspection and that it was directly connected with the Pecks's purpose.

## I. Standard of Review

Both parties agree to our standard of review in this case. We review the trial court's decision to deny a motion to correct error for abuse of discretion. *Principal Life Ins. Co. v. Needler*, 816 N.E.2d 499, 502 (Ind.Ct.App.2004). An abuse of discretion will be found when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences that my be drawn therefrom. *Id.* An abuse of discretion also results from a trial court's decision that is without reason or is based upon impermissible reasons or considerations. *Id.*

## II. Angelina's Affidavit

Bacompt first challenges the trial court's judgment by claiming that it improperly relied upon Angelina's affidavit as evidence in concluding that the Pecks had demonstrated a proper purpose pursuant to Indiana Code section 23–1–52–2. Bacompt argues that the affidavit was untimely pursuant to Indiana Trial Rule 6(D) and that it was impermissibly considered to be evidence pursuant to Indiana Trial Rule 43(A).

Indiana Trial Rule 6(D) provides in pertinent part that "[w]hen a motion is supported by affidavit, the affidavit shall be served with the motion; and, except as otherwise provided in Rule 59(D), opposing affidavits may be served not less than one [1] day before the hearing, unless the court permits them to be served at some other time." With respect to Bacompt's claim that the affidavit was untimely, we observe that a trial court may, in its discretion, accept affidavits submitted after a motion is filed. *Stackhouse v. Scanlon*, 576 N.E.2d 635, 640 (Ind.Ct.App.1991) (interpreting T.R. 6(D)), *trans. denied*. Bacompt was fully aware of the matter to be covered in the March 27, 2007 hearing on the Pecks's petition, it specifically deemed Angelina's purpose in seeking to inspect the records "suspect" in its March 23 response, yet it failed to call or subpoena witnesses. App. p. 66. We find no abuse of discretion in the trial court's denying Bacompt's motion to strike Angelina's affidavit on the basis that it was untimely or that its contents were an unfair surprise.

Bacompt next challenges the trial court's judgment by claiming that its reliance upon Angelina's affidavit violated Indiana Trial Rule 43(A), which mandates that "[i]n all trials the testimony of witnesses shall be taken in open court[.]" The Pecks respond by analogizing their petition to an Indiana Trial Rule 43(B) motion based upon facts not appearing of record, and argue that pursuant to Rule 43(B), it is permissible for the court to hear the matter on affidavits presented by the respective parties. As Bacompt points out, however, in *Holman v. Holman*, 472 N.E.2d 1279, 1289 (Ind.Ct.App.1985), this court specifically rejected the argument that an affidavit such as Angelina's was admissible on the basis that it merely constituted

evidence on a motion pursuant to current Trial Rule 43(B).

█ Like the hearing at issue in *Holman,* the hearing at issue in the instant case was for the purpose of determining issues of fact concerning, in this case, the Pecks's purpose and entitlement to inspect Bacompt's corporate records, which was the very basis of their petition. *See Wrights Beauty Coll., Inc. v. Bostic,* 576 N.E.2d 626 (Ind.Ct.App.1991), *trans. denied; Dynamics Corp. of Am. v. CTS Corp.,* 479 N.E.2d 1352 (Ind.Ct.App.1985) (both involving petitions to inspect corporate documents which were specifically tried to the lower court). The hearing therefore constituted a trial within the meaning of Trial Rule 43(A). *See McAllister v. State ex rel. Bryant,* 258 Ind. 238, 240, 280 N.E.2d 311, 312 (1972) (observing that "a 'trial' normally embraces a controversy and a hearing of evidence to determine issues of fact"). Accordingly, pursuant to Trial Rule 43(A), testimony was required to be taken in open court in order to preserve Bacompt's rights to cross-examination and the ability of the fact-finder to observe demeanor and determine credibility. *See Holman,* 472 N.E.2d at 1289 (distinguishing Trial Rule 43(A) from language of former Trial Rule 43(E), which is current Trial Rule 43(B)); *see also, Scott v. Crussen,* 741 N.E.2d 743, 747 (Ind.Ct. App.2000) (citing *Holman* for proposition that trial court erred in basing damage award upon affidavits and exhibits pursuant to language of current Trial Rule 43(B) because resolution of damages involved question of fact), *trans, denied.* In that Angelina's affidavit was introduced into evidence in lieu of her testimony for purposes of establishing—as a matter of fact—the Pecks's purpose in seeking to inspect Bacompt's corporate records, we conclude this was error.

As Bacompt points out, the trial court relied upon this affidavit in determining its findings of fact and conclusions thereon. In its findings of fact, the trial court specifically found, consistent with Angelina's statements in her affidavit, that, *inter alia,* the Pecks's divorce proceedings required a valuation of their Bacompt shares; Angelina did not have any documents in her possession from which she could value these shares; Angelina suspected the Stanleys had transferred Bacompt assets to themselves in a fashion similar to that alleged in Bacompt's federal complaint against the Pecks; and Angelina believed the value of her shares was diminished by an unknown amount due to the actions of Bacompt's controlling shareholders. In its conclusions, the trial court additionally determined, based upon Angelina's affidavit, that the Pecks had articulated a proper purpose for their inspection, namely that valuation was required within the context of the divorce proceedings as well as in their current dispute in litigation. The court further referred to the Pecks's allegations of mismanagement and self-dealing within Bacompt itself, allegations to which Angelina alluded in her affidavit.

The Pecks do not allege that any error in the court's consideration of the affidavit was harmless, and we do not find it to be. The trial court's primary justification in finding a proper purpose was the existence of the divorce proceedings alleged in Angelina's affidavit. Similarly, while wrongdoing by the Stanleys was previously alleged both in Angelina's answer in the federal action and in David's July 18, 2006 demand for inspection, it was only in Angelina's affidavit that such activity was alleged to have impacted the value of the stock, justifying the Pecks's need to inspect Bacompt's corporate records for valuation purposes. *See Wrights Beauty Coll.,* 576 N.E.2d at 630 (observing authority indicating that an alleged need for valuation does

not provide an adequate purpose if unaccompanied by a showing of a present need for such valuation). Further, regardless of whether the Pecks had ever alleged a proper purpose besides those in Angelina's affidavit, given the lack of an evidentiary hearing in this case, we are reluctant to endorse the trial court's findings of fact and conclusions thereon as somehow demonstrative of a proper purpose when there was no testimony or properly-admitted evidence establishing it.

### III. KSM Report

Bacompt further challenges the trial court's conclusion that the KSM report is an "accounting record" pursuant to Indiana Code section 23–1–52–2(b)(2) or that it was directly connected to a proper purpose under Indiana Code section 23–1–52–2(c)(3). Because there was no factual record in this case demonstrating a proper purpose, we find it unnecessary to address whether the KSM report qualifies as an accounting record or whether it was directly related to a proper purpose.

 Because these arguments will likely arise on remand, however, we briefly address them. The parties appeared to agree at the hearing, and do not dispute on appeal, that the KSM report contains an analysis of (1) the checks allegedly forged by David and (2) Bacompt's expenses for the years 2003 through 2005.[1] (Tr. 19) In challenging the KSM report's status as an accounting record, Bacompt argues that "accounting records" available for inspection under Indiana Code section 23–1–52–2 are only those records mentioned in Indiana Code section 23–1–52–1 (2006) which are regularly maintained by the corporation. Contrary to Bacompt's claim,

such limiting language does not appear in the statute, so we are disinclined to read Indiana Code section 23–1–52–2 so narrowly. While Bacompt points to cases from other jurisdictions interpreting different language in suggesting a narrow interpretation of the records available to Indiana shareholders for inspection, we are persuaded that "accounting records" under section 23–1–52–2(b) is sufficiently broad such that the KSM report would not be excluded from inspection due to the mere fact that it was not a record regularly maintained by Bacompt. *See, e.g., Wrights Beauty Coll.,* 576 N.E.2d at 628–31 (affirming trial court's granting shareholder's petition to inspect documents deemed "accounting records" when such documents included appraisals, lease agreements, and individual purchase agreements).

Bacompt further argues, based upon *Kaufman v. CA, Inc.,* 905 A.2d 749 (Del. Ch.2006), that the KSM report is not directly related to a proper purpose because, given the "plethora" of documents provided, the KSM report is not necessary and essential. We observe that the provisions of Indiana Code section 23–1–52–2 do not articulate such a "necessary and essential" standard for determining whether a requested document is directly connected with a shareholder's purpose. In any event, the relationship of the KSM report to the Pecks's purpose is a factual matter for the trial court upon remand to determine. But the mere fact that a "plethora" of documents has already been provided does not preclude a factual finding that the KSM report is nevertheless directly connected to a proper purpose.[2]

---

1. It appears from the transcript that the expense review was for years 2003 *and* 2005, but Bacompt argues in its brief that the expense review covers the years 2003 *through* 2005.

2. Contrary to Bacompt's claim, it is not our duty in our review of this petition for shareholder inspection under Indiana Code section 23–1–52–2 to speculate as to whether the KSM report potentially qualifies as work-

That said, of course the Pecks must demonstrate their entitlement to inspect all requested documents pursuant to Indiana Code section 23–1–52–2. While the trial court shall consider the Pecks's petition on an expedited basis pursuant to Indiana Code section 23–1–52–4(b) (2006), a trial on the merits is nevertheless required before a factual determination as to the elements of Indiana Code section 23–1–52–2 supporting the grant or denial of the petition may be made. *See* Indiana Trial Rule 43(A). Accordingly, we reverse and remand to the trial court.

The judgment of the trial court is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

BAKER, C.J., and DARDEN, J., concur.

product or is privileged in nature with respect to the pending federal litigation.