**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 19 2012, 9:09 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ERIK H. CARTER**
Cordell & Cordell, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**ALAN A. BOUWKAMP**
Newton Becker Bouwkamp Pendoski, PC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARTIN A. HARRIMAN, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 41A01-1111-DR-513 |
| | ) | |
| KRISTINA A. HARRIMAN, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE JOHNSON SUPERIOR COURT
The Honorable Cynthia Emkes, Judge
Cause No. 41D02-0310-DR-164

**June 19, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Father appeals the trial court's order modifying child custody and support and finding him in contempt. Father presents the following consolidated and restated issues for review:

1. Did the trial court abuse its discretion in modifying legal and physical custody?

2. Did the trial court abuse its discretion by failing to apply the child support modification to the filing date of Father's petition to modify?

3. Did the trial court properly interpret and apply the 6% Rule to uninsured health-care expenses?

4. Did the trial court abuse its discretion by finding Father in indirect contempt of court?

5. Did the trial court improperly allocate contribution to certain expenses of the minor child?

We affirm in part, reverse in part, and remand.

Mother and Father's marriage was dissolved in 2004 when their only child (Son) was about to turn four years old. The parties entered into an agreement, which the trial court accepted, regarding child support, custody, and settlement of property (the Decree). In particular, they agreed to joint legal and shared physical custody of Son, with an equal division of parenting time. The Decree also provided that "the provisions of the Indiana Parenting Time Guidelines shall apply as they pertain to holidays and general rules." *Appellant's Appendix* at 26. Pursuant to the Decree, Father paid weekly child support in the amount of $147. The parties apparently operated amicably under the Decree for several years without resort to the court.

When Son was in first grade, the school began to notice significant learning issues with him. In the beginning of third grade, the school scheduled a meeting with Mother and

2

Father. At this meeting, educators stressed that Son needed testing. Mother was unsure about testing at that time, and Father vehemently resisted it because he did not want his son labeled as a special education student. The principal eventually indicated that she would consider pursuing educational neglect charges if the parents did not authorize testing. Mother had hoped to persuade Father to allow the recommended testing, but when he would not change his mind, she unilaterally authorized testing by the school psychologist in 2009, at the end of third grade.

Testing revealed that Son has cognitive disabilities that affect his reading and comprehension.[1] As a result of his learning disability, educators met with the parents and established an Individualized Education Plan (IEP) for fourth grade. Part of the IEP involved Son receiving modified assignments and homework.

Father did not react well to Mother's decision to allow testing. As a result, he cut off communication between Son and Mother almost entirely during his parenting time.[2] In the summer after fourth grade, Father also stopped taking Son to weekly tutoring with Son's established tutor. Further, during fourth grade, Father refused to fully support the IEP plan and modifications implemented by the school. In particular, he would not allow modified homework during his parenting time. Father felt the modifications would make his son lazy and would not prepare him to graduate and for his future. He indicated that what Son really

---

[1] Son has also been diagnosed by his pediatrician as having ADD for which Adderall has been prescribed.

[2] On May 11, 2010, Father sent an email to Mother indicating that during his weeks with Son she should only call "if it is something 'special' and you need to talk to him". *Exhibits*, Respondent's Exhibit 39. Otherwise, she was not to call daily and interrupt his time with Son.

needs is just "a work ethic and bucking up". *August 24, 2011 Transcript* at 217. During his parenting time, therefore, Father required Son to do unmodified homework and made Son aware of his disagreement with the IEP.

On the other hand, Mother fully supported the IEP plan implemented by the school and helped with Son's modified homework. She also, unlike Father, actively communicated with Son's teachers and volunteered in the classroom. Thus, Son had two vastly different structures at home in the way that he learned and what he was told about his education.

As a result of the mixed messages Son was receiving from Mother and Father, educators observed stress and a changed attitude in Son. By the fall of 2010, Son began being disrespectful to his educators at times. Principal Shelley Coover opined this was the result of Son modeling Father's disrespect for the IEP. When required to take modified homework to Father's home, Son manifested stress, nervousness, and agitation. Eventually, during fifth grade, he began to refuse to take modified homework home during his weeks with Father and struggled to get everything done at school instead.

Despite being invited, Father failed to attend the IEP conference in April 2011 to plan for Son's transition into middle school. Father also missed a subsequent meeting with educators at the middle school, just before the start of school in August 2011. In fact, when informed of the meeting, Father sent a message to Mother indicating simply, "I'm going to decline on this meeting, I don't see anything productive coming from this at this time." *Exhibits*, Exhibit 9. He did arrange for an informal "meet and greet" with Son's new teacher and counselor to introduce himself and his fiancée. *August 24, 2011 Transcript* at 195.

Principal Coover testified that Father does not have a clear understanding of the nature

of Son's disability and, unlike Mother, has not been communicative and active in Son's educational process. When Son was allowed to follow the IEP, he experienced success at school. In contrast, when he was pressured by Father to do unmodified work, Son failed. Son's special education teacher testified that in her opinion the current visitation/custody arrangement does not work with respect to Son's educational needs because the IEP "needs to be followed a hundred percent of the time" by everyone in order for him to succeed. *April 13, 2011 Transcript* at 179. Each of the educators that testified agreed that the IEP was important to Son's success and that consistency at home during the school week, including uniform educational assistance and support, is in his best interest.

On March 3, 2010, Father filed a motion to modify child support. Mother filed a petition for modification of parenting time, legal custody, and child support, for citation for contempt, and request for award of attorney fees on August 2, 2010. A court-ordered custody evaluation was filed on October 8, 2010, followed by an addendum on October 18, 2010.[3] The final hearing was bifurcated over two days, April 12, 2011 and August 24, 2011. The court took the matter under advisement and issued its order on disposing of all pending

---

[3] Contrary to Father's assertion on appeal, the evaluator did not recommend that the shared custody arrangement remain the same. Rather, the evaluator indicated that Father needed to "adjust his outlook on his child's educational needs" and recommended that the court give Father "another chance to work with educators and make [Son's] educational plan consistent." *Appellant's Appendix* at 108. *If* Father demonstrated commitment to working with educators and to consistently following the IEP, the evaluator recommended that joint physical custody continue. If, however, Father continued defying the directives of educators, the evaluator recommended that the court reduce Father's parenting time. By Father's own admission, nothing changed between the date of the evaluation (October 2010) and the last day of the hearing (August 24, 2011) regarding his view of the IEP and his son's educational needs.

5

matters October 17, 2011. Notably, the court found Father in contempt for various reasons, awarded sole legal custody and primary physical custody to Mother, reduced the amount of Father's child support payments, and addressed other support issues. Father now appeals.

1.

Father initially contends that the trial court erred by modifying the existing shared legal and physical custody arrangement. He claims that he should have been granted sole legal custody and physical custody should have remained unchanged.

It is well established that we review custody modifications for abuse of discretion, granting particular deference and latitude to our trial courts in family law matters. *See Werner v. Werner*, 946 N.E.2d 1233 (Ind. Ct. App. 2011), *trans. denied*. In reviewing a judgment issued with special findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), we first determine whether the evidence supports the findings and then consider whether the findings support the judgment. *Id*. We will reverse only if the judgment is clearly erroneous. *Id*. That is, we will reverse if our examination of the record leaves us with the firm conviction that a mistake has been made. *Id*. In making this determination, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. *Id*. We will not reweigh the evidence or assess the credibility of the witnesses. *Id*.

Pursuant to Ind. Code Ann. § 31-17-2-21(a) (West, Westlaw current through legislation effective May 31, 2012), a trial court may not modify custody unless the modification is in the best interests of the child and there is a substantial change in one or more of the factors that the court may consider in making an initial custody award, as set

forth in I.C. § 31-17-2-8 (West, Westlaw current through legislation effective May 31, 2012).[4] Further, with respect to the modification of joint legal custody, the trial court should also consider the factors listed in I.C. § 31-17-2-15 (West, Westlaw current through legislation effective May 31, 2012), which include whether the parents are willing and able to communicate and cooperate in advancing the child's welfare.

In the instant case, the trial court specifically found as follows when modifying the legal and physical custody arrangement:

> a. Mother and Father cannot communicate in a reasonable manner about anything, but especially about matters related to [Son]. Mother has made several attempts over the past two years to communicate with Father in regard to [Son], and her efforts have been substantially ignored by him.
>
> b. Without Father's participation in the decision-making process in regard to [Son's] welfare, it is impossible for the parties to share joint legal custody. Father has repeatedly refused to return e-mails and phone calls to Mother, failed to participate with Mother in educational meetings…, failed to notify Mother in regard to medical matters regarding [Son], and failed to notify Mother in regard to caregiver's information and tutoring information. Mother, on the other hand, has

---

[4] Though not an exhaustive list, the statute sets forth the following factors to consider:

(1) The age and sex of the child.
(2) The wishes of the child's parent or parents.
(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
(4) The interaction and interrelationship of the child with:
    (A) the child's parent or parents;
    (B) the child's sibling; and
    (C) any other person who may significantly affect the child's best interests.
(5) The child's adjustment to the child's:
    (A) home;
    (B) school; and
    (C) community.
(6) The mental and physical health of all individuals involved.
(7) Evidence of a pattern of domestic or family violence by either parent.
(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

I.C. § 31-17-2-8.

consistently tried to involve Father in matters related to [Son's] welfare, and has always notified him in regard to important medical and educational matters.

c.    At the time the Decree issued, [Son] was only four (4) years old, and he is now an eleven (11) year old student. Over the years, [Son] has demonstrated a history both at school and at home of showing symptoms of moderate to severe anxiety and mild obsessive behaviors. [Son] has been diagnosed by his pediatrician with Attention Deficit Disorder and is prescribed medication for the same. [Son's] special education and behavioral needs requires his parents to set aside their discontent with one another to communicate regularly and civilly with each other in his best interest, and if Father is unable or unwilling to do so, Mother should be the sole custodian. Father has avoided initiating communications with Mother in regard to [Son's] welfare for over a year and he has not responded to her attempts at communications with him.

d.    Father and Mother drastically disagree in regard to matters that are directly related to [Son's] welfare, including but not limited to, the following; medical treatment, dental treatment, educational needs, the learning approach best suited for him, extracurricular activities, and the level of communication each should be allowed with [Son] when he is with the other parent.

e.    The current shared physical custody arrangement is not in [Son's] best interest given his special education needs and his behavioral issues, in part, for the following reasons: Father refused to have any level of effective communication with Mother in regard to [Son], Father and Mother differ in their approach to [Son's] educational needs and this difference sends extremely mixed messages to [Son] causing him to suffer anxiety and confusion and affecting his ability to focus and prosper in school, and as summed up by the custody evaluator… "the inconsistency is affecting [Son] in the classroom in regards to behavior and class work."

f.    The current shared physical custody arrangement is not in [Son's] best interest given his special education needs and his behavioral issues, in part, for the following reasons: As stated by the custody evaluator, Father "is not cooperating or collaborating at a level that is sufficient for [Son] to prosper" at school, the evidence is consistent from school professionals that changing [Son's] learning habits from week to week is hindering [Son's] development not only educationally, but also in regard to his ability to mature mentally, Father is not working with the teachers in [Son's] best interests in regard to the educational approach that is best for him and has actually worked against them, and Father has refused to take [Son] to the tutor that Mother has consistently taken

him to (and that the school communicates with) and Father does not communicate with the tutor.

g.  Mother has been cooperating with [Son's] teachers, counselors, and the school professionals and has followed the specific [IEP] developed for [Son]. Mother communicates regularly with [Son's] teachers and other school staff members in regard to [Son's] education and she facilitates communication between his teachers, counselors, and tutor.

*Appellant's Appendix* at 16-18. Based upon these findings, the court concluded that there had been a substantial change in circumstances since the original custody agreement was entered into and that it was now in Son's best interest that Mother be awarded sole legal and primary physical custody. The court awarded parenting time to Father pursuant to the Indiana Parenting Time Guidelines with additional overnight parenting on the Sunday of his weekend parenting time.

With respect to the modification of legal custody, Father does not directly challenge any of the special findings issued by the trial court. Rather, he asserts, "the award of sole legal custody rewarded the parent who continually and routinely violated the previous order of joint legal custody." *Appellant's Brief* at 12. In other words, he points to Mother's alleged failings and, thus, claims that he should have been awarded sole legal custody.

We reject Father's blatant invitation for us to reweigh the evidence. The record and findings of the trial court plainly establish substantial changes in the relevant statutory factors affecting a custody award, including a substantial change in the child's age, the child's adjustment to home and school, and the child's mental health. *See* I.C. § 31-17-2-8. Further, it is apparent that Mother and Father are no longer able to communicate and cooperate in advancing Son's welfare. *See* I.C. § 31-17-2-15. Under the circumstances, modification of the joint legal custody arrangement was appropriate and the evidence favorable to the

9

judgment (as reflected in the trial court's findings) clearly supports the court's decision to award sole legal custody to Mother.

Father also contends that the modification of physical custody was improper. In addition to his meritless assertion that the trial court failed to find a substantial change in at least one relevant factor affecting custody determinations, Father argues that the court failed to find that parenting time with him might endanger Son's physical health or significantly impair the child's emotional development.

Mother presented ample evidence that the shared physical custody arrangement was no longer in Son's best interests. Contrary to Father's assertion on appeal, the issues in this case go far beyond a simple disagreement regarding how to help Son with homework. Since Mother consented to testing of Son at the end of third grade, Father's willingness to communicate and cooperate with Mother has virtually ceased. He has also refused to fully comply with the IEP and has openly voiced the reasons for his opposition to his son. The evidence establishes that Father does not have a true grasp on the educational difficulties and special needs of his child.

As a result of Father's opposition to the IEP and refusal to do modified homework during his parenting time, Son faces two vastly different structures at home in the way that he learns and what he is told about his education. This has resulted in stress, nervousness, and agitation for Son at school, as well as some acting out against educators. The evidence establishes that consistent parenting and educational support is particularly important given Son's learning disability, and Father has refused to provide such consistency even after being urged to do so by the custody evaluator in October 2010. The trial court did not abuse its

discretion by awarding primary physical custody to Mother in order to serve the best interests of the child.

Moreover, we observe that Father's reliance on I.C. § 31-17-4-2 (West, Westlaw current through legislation effective May 31, 2012) is misplaced. This statute provides as follows:

> The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.

As set forth above, the trial court found that modification of the shared physical custody arrangement was in Son's best interests and that Mother should be granted physical custody of Son. Said modification, however, did not result in a restriction on Father's parenting time rights. *Cf. D.B. v. M.B.V.*, 913 N.E.2d 1271 (Ind. Ct. App. 2009) (Father's rights were restricted by issuance of a no-contact order that effectively terminated his parenting time). On the contrary, as a result of the change in custody, Father was granted reasonable parenting time in accordance with the Indiana Parenting Time Guidelines, as well as additional overnight parenting on the Sunday of his weekend parenting time. *See* I.C. § 31-17-4-1(a) (West, Westlaw current through legislation effective May 31, 2012) ("parent not granted custody…*is entitled to reasonable parenting time rights* unless the court finds…that parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development") (emphasis supplied). Father has failed to establish error in this regard.

2.

Father next challenges the trial court's rejection of his request to retroactively apply the child support modification to the filing date of his petition. He notes that his weekly support obligation was modified from $147 to $72, and the litigation lasted from March 2010 to October 2011.[5]

A trial court has discretion to make a modification of support relate back to the date a petition to modify is filed or "any ensuing date after a petition to modify is filed." *Wiley v. Wiley*, 444 N.E.2d 315, 319 (Ind. Ct. App. 1983). *See also Sexton v. Sedlak*, 946 N.E.2d 1177 (Ind. Ct. App. 2011), *trans. denied*. We review the court's choice of the effective date only for abuse of discretion. *Holman v. Holman*, 472 N.E.2d 1279 (Ind. Ct. App. 1985).

In Father's fleeting analysis of this issue, he makes no attempt to establish an abuse of discretion[6] and seems to contend that any time there is a delay in the proceedings the court must order the modification to relate back to the date the petition to modify was filed. On the contrary, the law requires that Father demonstrate an abuse of the trial court's discretion,

---

[5] Father asserts generally that delays resulted from Mother's request to modify custody and her multiple requests for continuances. The record, however, establishes that Father also sought and acquiesced to continuances and delayed providing discovery to Mother. Moreover, Father had three different attorneys during the modification proceedings, which caused delays.

[6] In fact, in his reply brief, Father expressly rejects Mother's claim that Father was required to establish an abuse of discretion in the effective date chosen by the trial court.

which he has not done.  *See id.*  Accordingly, we find no error.

3.

Father contends that the trial court improperly interpreted and applied the 6% Rule set out in Ind. Child Support Guideline 7 for allocation of uninsured health care expenses.  He asserts, "nothing says that the 6% apportionment is recalculated on an annual basis, or that the payee of child support effectively gets to keep any unused portion of the 6% Rule."  *Appellant's Brief* at 22.  Father's argument in this regard is wholly without merit.

Guideline 7 provides that the custodial parent is responsible for uninsured health care expenses "up to six percent (6%) of the basic child support obligation", and expenses in excess of this amount are to be apportioned between the parents.  Further, the commentary to Guideline 7 clearly establishes that the calculations are to be made "on an annual basis".  For example, the commentary sets forth the simple calculation[7] for arriving at "the amount the custodial parent must spend on the uninsured health care costs of the parties' child(ren) in any calendar year before the non-custodial parent is required to contribute toward payment of those uninsured costs."  Among other things, the commentary also indicates:  "The 6% rule applies to expenses actually paid by the custodial parent each year."

In addition to the language in the commentary to Guideline 7, we observe that the support worksheet submitted by the parties upon their dissolution in 2004 sets forth Mother's "annual obligation" toward uninsured health care expenses as $605 and indicates that the balance of "annual expenses" are to be paid 73% by Father and 27% by Mother.  *Appellant's*

---

[7]  The calculation is: the weekly basic child support obligation (line 4 of the worksheet) multiplied by 52 (weeks) multiplied by .06.

13

*Appendix* at 36. Thus, it is apparent that the parties contemplated a yearly calculation/obligation.

Mother did not track or seek reimbursement from Father until 2010, when son's health-care expenses substantially increase due to orthodontia care. The evidence reveals that based upon the calculations from the 2004 support worksheet and the amounts actually paid by Mother, Father owes Mother $572.90 for his portion of the uninsured health care expenses from 2010.

With respect to 2011, the trial court found that Father owed $465 for his share of uninsured medical expenses up until April 2011. We agree with Father that there is no support in the record for this determination. The only reference to $465 is in Respondent's Exhibit 32, a one-sentence email from Mother to her legal counsel stating, "The total for 2011 so far is $465.00." At the hearing, Mother indicated that this amount was what she had paid in uninsured costs for 2011 as of March 31, 2011. While Father is certainly obligated to pay his share of uninsured medical expenses from 2011, the trial court's finding that he owes Mother $465 is clearly erroneous.

4.

Father contends that the trial court abused its discretion by finding him in contempt. He claims he did not act with willful disobedience of a court order.

> A party that is willfully disobedient to a court's order may be held in contempt of court. The order must be "clear and certain" in its requirements. It is soundly within the discretion of the trial court to determine whether a party is in contempt, and we review the judgment under an abuse of discretion standard. "We will reverse a trial court's finding of contempt only if there is no evidence or inference therefrom to support the finding." … Crucial to the determination of contempt is the evaluation of a person's state of mind, that is,

14

whether the alleged contemptuous conduct was done willfully.… The trial court possesses unique knowledge of the parties before it and is in the best position to determine how to maintain its "authority, justice, and dignity" and whether a party's disobedience of the order was done willfully.

*Witt v. Jay Petroleum, Inc*., 964 N.E.2d 198, 202-03 (Ind. 2012) (citations omitted).

In the instant case, the trial court found Father in contempt of court for:

willfully and intentionally failing to pay uninsured healthcare expenses per the Decree, failing to follow the Indiana Parenting Time Guidelines in regard to the right of Mother to exercise first refusal if Father is not home during his custodial time, and for consistently and repeatedly failing to allow reasonable phone contact between Mother and [Son].

*Appellant's Appendix* at 18. Father challenges each of the grounds upon which he was found in contempt.

Father initially reiterates his interpretation of the 6% Rule upon which he refused to pay the uninsured health care expenses sought by Mother. He claims his refusal to pay was not an act of willful disobedience because he expressed willingness to pay once the court decided which party's interpretation was correct. As explained above, Father's interpretation was entirely without merit. Moreover, the record establishes that Mother accurately explained the 6% Rule to Father in early 2010 and urged him to contact his attorney for clarification. Mother's attorney followed with a letter to Father's attorney in April 2010, detailing the uninsured health-care expenses owed by Father. Father's attorney withdrew from the case later that month, and Father has never indicated that his interpretation was supported by counsel. Under the circumstances, the trial court did not abuse its discretion by finding Father in contempt for refusing to pay his share ($572.90) of uninsured health-care expenses for 2010.

We now turn to the two remaining grounds upon which the court found Father in contempt. Father's argument is simply a request to reweigh the evidence, which we will not do. Though slight, there is evidence in the record indicating that Father had failed in the past to offer Mother the opportunity for additional parenting time when he was out of town or otherwise unavailable to care for Son. *See Shelton v. Shelton*, 835 N.E.2d 513 (Ind. Ct. App. 2005), *aff'd by* 840 N.E.2d 835 (Ind. 2006) (addressing the right of first refusal under section I(C)(3) of the Indiana Parenting Time Guidelines).

Further, there is ample evidence in the record that on a regular basis Father thwarted phone contact between Son and Mother. In fact, Father specifically warned Mother in a May 11, 2010 email that she should not interrupt his time with Son with daily phone calls and should only call "if it is something 'special' and you need to talk to him". *Exhibits*, Respondent's Exhibit 39. Since her decision to allow testing in 2009, Mother testified that Father has only allowed phone contact between her and Son a total of about five times. Father does not dispute this. Rather, he claims that "no schedule for telephone contact with the child was ordered by the Court." *Appellant's Brief* at 25. This is disingenuous given that the Decree expressly incorporated "the provisions of the Indiana Parenting Time Guidelines…as they pertain to holidays and general rules." *Appellant's Appendix* at 26. Section I(A)(3) clearly requires each parent to provide "reasonable phone access" to their child "at all times." There was nothing reasonable about the extremely limited access allowed by Father when Son was in his care.

In sum, the trial court properly found Father in contempt of court. In its order, the trial court indicated that Father could purge himself of contempt by paying Mother $572.90

16

for his portion of 2010 health care expenses and $465.00 for his share of 2011 health care expenses accrued through April 2011. We have determined that the amount for 2011 is not supported by the evidence. Therefore, on remand, the trial court is directed to correct this portion of the order by either vacating the requirement that Father pay $465.00 or by holding a hearing to determine the actual unpaid amount due, if any.

5.

Finally, Father challenges the blanket allocation of optional or extracurricular expenses among the parties without requiring that the parents first discuss and agree on Son participating in the activity.[8] He complains that this allows Mother to impose a debt on him without his knowledge or consent. Indiana Child Support Guideline 8 addresses the issue of extraordinary expenses. The Guideline provides in part:

> **Other Extraordinary Expenses**. The economic data used in developing the Child Support Guideline Schedules do not include components related to those expenses of an "optional" nature such as costs related to summer camp, soccer leagues, scouting and the like. When both parents agree that the child(ren) may participate in optional activities, the parents should pay their pro rata share of these expenses. In the absence of an agreement relating to such expenses, assigning responsibility for the costs should take into account factors such as each parent's ability to pay, which parent is encouraging the activity, whether the child(ren) has/have historically participated in the activity, and the reasons a parent encourages or opposes participation in the activity. If the parents or the court determine that the child(ren) may participate in optional activities, the method of sharing the expenses shall be set forth in the entry.

---

[8] The trial court ordered in relevant part as follows:

> In regard to extracurricular expenses such as sports, *band*, and various camps…Father and Mother are ordered to pay equally toward the same and Mother is ordered to provide Father said expense information within thirty (30) days of the expense being incurred, and Father is ordered to reimburse Mother within fourteen (14) days thereafter.

*Appellant's Appendix* at 18 (emphasis supplied). We note that this order plainly applies to Son's tuba expense for band class.

Child Supp. G. 8.

Relying on Guideline 8, Father asks that we remand with instructions for the trial court to modify the order to require that the parties consult with each other and agree on Son's participation in each proposed activity. While communication and agreement among parents is certainly preferred, the Guideline does not require this and, in fact, specifically contemplates disagreement in some cases. In light of Father's shoddy track record of communicating and cooperating with Mother over the last several years and the resulting change in legal custody, the trial court did not abuse its discretion by allowing Mother to unilaterally determine what optional activities Son will participate in and by ordering the parents to equally share the expenses for any such activities. This, of course, does not mean that Father has no recourse if Mother abuses this right or if his financial circumstances substantially change.

Judgment affirmed in part, reversed in part, and remanded with instructions to correct the contempt finding as it relates to the uninsured health care expense for 2011.

MAY, J., and BARNES, J., concur.